IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WILLIAM WERSINGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-262-GMS |
| | ) | |
| BANK OF AMERICA CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPENING BRIEF**
**IN SUPPORT OF ITS MOTION TO DISMISS**

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Sheldon N. Sandler (I.D. No. 245)
Scott A. Holt (I.D. No. 3399)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
Telephone: (302) 571-6673; (302) 571-6623
Facsimile: (302) 576-3330; (302) 576-3299
Email: ssandler@ycst.com;sholt@ycst.com
Attorneys for Defendant

Date: June 5, 2007

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

NATURE AND STAGE OF PROCEEDINGS ......................................................1

SUMMARY OF ARGUMENT .............................................................................2

STATEMENT OF FACTS ....................................................................................3

ARGUMENT .........................................................................................................5

I.    THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
      JURISDICTION BECAUSE THE STATE LAW CLAIMS PRESENT
      NOVEL ISSUES OF LAW, SUBSTANTIALLY PREDOMINATE OVER
      THE FEDERAL CLAIMS, AND INVOLVE EXCEPTIONAL
      CIRCUMSTANCES. ...................................................................................5

      A.    Overview of Supplemental Jurisdiction. ............................................5

      B.    The Plaintiff's State-Law Claims Present Novel And Complex Issues
            Which Have Yet To Be Addressed By A Delaware State Court. ......................7

            1.    Class actions are not permitted under the DWPCA. .............................7

            2.    A private cause of action does not exist under the   Delaware Meal
                  Break Statute. ..................................................................9

      C.    The State-Law Claims Substantially Predominate Over The FLSA Claim.....11

            1.    The state law claims are broader in scope and in terms of proof.........11

            2.    The state law claims are broader in remedies. ....................................14

            3.    The size of the state claims classes would predominate over the
                  federal class...........................................................................15

      D.    Plaintiff Should Not Be Permitted To Use Rule 23's Opt-Out Provisions
            As An End Run Around the FLSA's Clear Congressional Mandate of
            Collective Opt-In Actions. ...........................................................16

CONCLUSION....................................................................................................20

DB02:6005376.2                                                                      061442.1002

# TABLE OF AUTHORITIES

## Cases

De Asencio v. Tyson Foods, Inc.,
   342 F.3d 301 (3d Cir. 2003) ................................................................ passim

Foster v. The Food Emporium,
   2000 U.S. Dist. LEXIS 6053,
   (S.D.N.Y. April 26, 2000) ...............................................................17

Greylag 4 Maint. Corp. v. Lynch-James,
   2004 Del. Ch. LEXIS 145,
   (Del. Ch. Oct. 6, 2004)...................................................................9

Heller v. Dover Whse. Mkt., Inc.,
   515 A.2d 178 (Del. Super. Ct. 1986) ..............................................10

Isaac v. Wm. H. Pflaumer & Sons, Inc.,
   1990 U.S. Dist. LEXIS 8892,
   (E.D. Pa. July 17, 1990)..................................................................18

Leuthold v. Destination America, Inc.,
   224 F.R.D. 462 (N.D. Cal. 2004).....................................................19

Local 435 v. General Motors Corp.,
   1985 Del. Super. LEXIS 1045
   (Del. Super. Ct. Aug. 8, 1985) .........................................................7

Lyon v. Whisman,
   45 F.3d at 758 (3rd Cir. 1995) ........................................................13

Marine v. State,
   607 A.2d 1185 (Del. 1990) ..............................................................7

Mossman v. CNC Ins. Assoc., Inc.,
   1993 Del. Ch. LEXIS 170,
   (Del. Ch. Aug. 19, 1993) .................................................................8

Pirrone v. North Hotel Assocs.,
   108 F.R.D. 78 (E.D. Pa. 1985).........................................................18

Robbins v. Tremont Medical, Inc.,
   1997 Del. Ch. LEXIS 6,
   (Del. Ch. Jan. 16, 1997) ..................................................................8

Rodriguez v. The Texan. Inc,
   2001 U.S. Dist. LEXIS 24652,
   (N.D. Ill. 2001) ..........................................................................................................19

United Mine Workers of America v. Gibbs,
   383 U.S. 715 (1966)..............................................................................................11, 17


## Statutes

19 Del. C. § 1101 ..........................................................................................................1, 12

19 Del. C. § 1102 ..........................................................................................................3, 12, 14

19 Del. C. § 1112 ..........................................................................................................10

19 Del. C. § 1113 ..........................................................................................................7, 10, 12, 14

19 Del. C. § 707 ..........................................................................................................passim

28 U.S.C. § 1331 ..........................................................................................................1

28 U.S.C. § 1367 ..........................................................................................................passim

29 U.S.C. § 201..........................................................................................................1

29 U.S.C. § 207..........................................................................................................3

29 U.S.C. § 216..........................................................................................................3, 18

43 P.S. § 260.9 ..........................................................................................................8


## Rules

Fed. R. Civ. P. 23..........................................................................................................6, 16, 17

Super. Ct. Civ. R. 23 ..........................................................................................................8

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff William Wersinger filed this action on May 15, 2007 against Defendant Bank of America Corporation ("Bank of America"). The Plaintiff seeks relief individually and on behalf of a purported class[1] of Bank of America employees under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq*., Delaware's Wage Payment and Collection Act (DWPCA), 19 *Del. C.* §§ 1101 *et seq*., and Delaware's Meal Break Statute, 19 *Del. C.* § 707.

Subject matter jurisdiction exists over the FLSA claim pursuant to 28 U.S.C. § 1331 (federal question). Although not specifically pled, supplemental jurisdiction over the state law claims would have to exist, if at all, under 28 U.S.C. § 1367.

This is Defendant's Opening Brief in support of its Motion to Dismiss the state law claims on subject matter jurisdictional grounds.

---

[1] Plaintiff did not designate this case as a "Class Action" in the caption as required by Delaware Local Rule 23.1. However, a review of the allegations makes it clear that the case is filed as a class action.

1

## SUMMARY OF ARGUMENT

1.  There are overwhelming reasons to decline supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(c).

2.  Both state law claims present novel and complex issues that have not been decided by a Delaware state tribunal.  First, there is significant evidence that the Delaware General Assembly never intended that class actions be available under the Delaware Wage Payment and Collection Act.  In addition, there is no indication that a private cause of action exists under the Delaware Meal-Break Statute.

3.  The state law claims also substantially predominate over the federal claims in terms of proof and potential scope.  The state claims have significant differences in the standard of proof, scope of issues, and the remedies available in comparison to the FLSA claim.  There also will be a likely disparity in numbers between an FLSA opt-in class and the opt-out classes for both state law claims.

4.  Finally, the case presents compelling circumstances for this Court to decline jurisdiction in view of the concerns regarding its exercise of jurisdiction over individual members of the state-law claim classes who would not be asserting a federal claim.

## STATEMENT OF FACTS

Plaintiff alleges he is an employee of Defendant who worked as a paralegal up until November 2006. D.I. 1, Complaint, ¶ 34. The essence of his claim is that Defendant failed to pay him overtime compensation and wages as required under federal and state law, and that he was denied his Delaware statutory entitlement to meal breaks during the work day. D.I. 1, ¶¶ 40 - 47.

Counts I and II of the Complaint are brought under the FLSA. In Count I, Plaintiff alleges that the Defendant failed to pay the required overtime wages in violation of 29 U.S.C. § 207 (a)(1). D.I. 1, ¶ 57. The Plaintiff alleges in Count II that Defendant violated the FLSA by not paying him for work performed during meal periods, in other departments, and at a mandatory off-site company-sponsored event. D.I. 1, ¶ 63.

Counts I and II are brought as collective or "opt-in" actions pursuant to 29 U.S.C. § 216 (b) on "behalf of and to protect the rights of all similarly situated employees for the three years preceding the filing of this Complaint." D.I. 1, ¶¶ 59; 65. The FLSA claim constitutes the sole basis for original subject matter jurisdiction with this Court.

The state law claims are contained in Counts III and IV of the Complaint. Plaintiff alleges in Count III that Defendant violated 19 *Del. C.* § 1102 of the DWPCA by failing to pay him and purported members of a "class" for all hours worked. D.I. 1, ¶ 67. In Count IV, the Plaintiff alleges Defendant violated Delaware's Meal Break Statute, 19 *Del. C.* § 707(a), by failing to provide him and "class members" with a 30 minute meal break when they worked over 7.5 hours in a workday. D.I. 1, ¶ 72.

Plaintiff requests that Counts III and IV proceed as an "opt-out" class action under Federal Rule of Civil Procedure 23. D.I. 1, ¶¶ 70, 73. He contends that the prerequisites of Rule 23 have been met because the class is allegedly too numerous to practicably join,

significant common questions of law and fact exist, his claims are typical of those of the proposed class, and that he will fairly and adequately represent the class. D.I. 1, ¶ 21-29. Plaintiff also alleges that a Rule 23 class action concerning state law claims is the superior method for handling the case because individual joinder of all class members is not practicable and common class questions of law and fact predominate over any questions affecting only individual members of the proposed class. D.I. 1, ¶ 30.

4

## ARGUMENT

**I.    THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION BECAUSE THE STATE LAW CLAIMS PRESENT NOVEL ISSUES OF LAW, SUBSTANTIALLY PREDOMINATE OVER THE FEDERAL CLAIMS, AND INVOLVE EXCEPTIONAL CIRCUMSTANCES.**

**A.    Overview of Supplemental Jurisdiction.**

At issue in this case is whether this Court should exercise supplemental jurisdiction over the state law claims brought in the Complaint.  28 U.S.C. § 1367, which was enacted in 1990, governs this Court's ability to assert supplemental jurisdiction over non-federal claims. In determining whether supplemental jurisdiction is appropriate, a district court must make two inquiries.

The first inquiry relates to whether the district court has the authority to exercise supplemental jurisdiction as required under 28 U.S.C. § 1367(a).  Section 1367(a) provides that the district court, subject to certain exceptions, "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

The second inquiry focuses on whether the district court should, in the exercise of its sound discretion, decline supplemental jurisdiction over the non-federal claims.  Section 1367(c) provides a list of four circumstances in which a district court may decline to exercise supplemental jurisdiction:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

5

(4) in exceptional circumstances, there are other compelling reasons for declining

jurisdiction.  28 U.S.C. § 1367(c).

The Court of Appeals for the Third Circuit has considered the precise statutory

circumstances under which a district court should decline supplemental jurisdiction pursuant

to Section 1367(c).  The case involved remarkably similar claims as the present case and

required the court to address the scope of supplemental jurisdiction for class action cases

involving the FLSA.

In *De Asencio v. Tyson Foods, Inc*., the plaintiffs filed suit under both federal law

(FLSA) and state law (Pennsylvania's Wage Payment & Collection Law (WPCL)) alleging

the defendant failed to pay its employees for time spent donning and doffing work clothes.

342 F.3d 301, 304 (3d Cir. 2003).  As in the instant case, the plaintiffs in *De Asencio*  sought

class certification of an "opt in" class under the FLSA, and an "opt out" class for the WPCL

claim under Fed. R. Civ. P. 23.  *Id.* at 304.

The Third Circuit, after granting an interlocutory appeal, found that the district court

had abused its discretion by exercising supplemental jurisdiction over the plaintiffs' state law

claim. 342 F.3d 301.   It held that the claims under the Pennsylvania WPCL substantially

predominated over the plaintiffs' FLSA claim in terms of proof and the scope of the issues.

*Id.* at 311-312.  The Court of Appeals also found that relegating the Pennsylvania WPCL

claims to state court was in line with the Congressional preference to limit the jurisdictional

scope of federal courts for cases involving FLSA collective actions. *Id.* at 310.

As explained more fully below, the circumstances of the instant case provide an even

more compelling case than *De Asencio* to decline the exercise of supplemental jurisdiction.

Not only does the instant case contain many of the same factors that prompted the Third

6

Circuit to reject supplemental jurisdiction, the state law claims in this case present issues of first impression not previously addressed by a Delaware state court. The unique and complex nature of these issues alone provides sufficient justification for this Court to decline the exercise of supplemental jurisdiction.

**B.     The Plaintiff's State-Law Claims Present Novel And Complex Issues Which Have Yet To Be Addressed By A Delaware State Court.**

**1.     Class actions are not permitted under the DWPCA.**

One of the unique features of this case that was not present in *De Asencio* is whether class actions are even permissible under the state wage claim asserted by Plaintiff. The legislative history of the DWPCA shows that the Delaware General Assembly expressly amended the statute so as to preclude claims brought by more than one employee. *Marine v. State*, 607 A.2d 1185, 1203 (Del. 1990) ("'[i]n seeking legislative intent, it is frequently helpful at the outset to trace the legislative history of the statutory scheme.")

The current statute provides that "[a] civil action to recover unpaid wages and liquidated damages may be maintained in any court of competent jurisdiction." 19 *Del. C.* § 1113(a). This language derives from an amendment passed by the Delaware General Assembly in 1984. *See Local 435 v. General Motors Corp.*, 1985 Del. Super. LEXIS 1045, *4 n.1 (Del. Super. Ct. Aug. 8, 1985); 64 Del. Laws C. 226 §§ 2, 3.

The pre-1984 language of Section 1113(a), however, was significantly different. It provided:

> (a) A civil action to recover unpaid wages and liquidated damages may be maintained in any court of competent jurisdiction *by any 1 or more employees for and in behalf of himself or themselves, or such employee or employees may designate an agent or representative to maintain such action.*

7

*Local* 435, 1985 Del. Super. LEXIS 1045 at *4 (emphasis added).   Thus, Section 1113(a) of

the D*WPC*A formerly authorized actions by one or more employees, and provided that

employees could designate an agent or representative to maintain the action.  In 1984,

however, the Delaware General Assembly removed the language authorizing employees to

bring suits on behalf of themselves and permitting the designation of agents or

representatives to maintain DWPCA actions, creating the present version of Section 1113.

Even prior to its amendment in 1984, Section 1113 never authorized employee suits

on behalf of others similarly situated under the DWPCA.  The absence of such language from

the DWPCA stands in sharp contrast to other state wage payment and collection laws, such

as Pennsylvania's, which expressly authorize employee class action suits.  *See e.g*., 43 P.S. §

260.9a(b) (authorizing suits to recover unpaid wages and liquidated damages under the

Pennsylvania Wage Payment and Collection Law by "any one *or more employees for and in*

*behalf of himself or themselves and other employees similarly situated*…") (emphasis added).

Additional evidence from the structure of the Delaware state court system supports

the conclusion that class actions were not intended to be authorized under the DWPCA.

First, actions under the DWPCA are actions at law, and thus must ordinarily be brought in

the Superior Court.  *See e.g., Mossman v. CNC Ins. Assoc., Inc.*, 1993 Del. Ch. LEXIS 170,

*3-4 (Del. Ch. Aug. 19, 1993) (recognizing that claims under the DWPCA are actions at law

which ordinarily may not be brought in the Court of Chancery); *see also Robbins v. Tremont*

*Medical, Inc*., 1997 Del. Ch. LEXIS 6, *11 (Del. Ch. Jan. 16, 1997).  Yet, prior to 1994, class

actions could not be maintained in the Superior Court.  *See* Super. Ct. Civ. R. 23 (added,

effective Sept. 30, 1994).  Thus, at the time of enactment of the DWPCA, class actions at law

were not available in Delaware.  This fact, coupled with the amendment of Section 1113 in

1984, and the absence of clear statutory language authorizing the maintenance of actions on behalf of others similarly situated, demonstrates the legislative intent that class actions are not permitted under the DWPCA.

In any case, no Delaware court has addressed the availability of class actions under the DWPCA. Given the lack of guidance from the Delaware courts, no doubt because it is clear that class actions are not permitted, this Court should decline to exercise its supplemental jurisdiction under 28 U.S.C. § 1367(c) because it presents a novel and complex issue of state law. *Cf., De Asencio*, 342 F.3d at 311 (finding that the need to resolve novel and complex issues of Pennsylvania law, "which are better left to the Pennsylvania state courts, weighs in favor of declining supplemental jurisdiction.").

> **2.      A private cause of action does not exist under the Delaware Meal Break Statute.**

The availability of a class action remedy under the Meal Break Statute is also unlikely. This is because the Statute does not even provide a basis for relief for the Plaintiff. The Meal Break Statute only mandates, in certain situations, that Delaware employers provide an "unpaid meal break of at least 30 consecutive minutes, if the employee works 7 ½ or more consecutive hours." 19 *Del. C.* § 707 (emphasis added). Unlike the DWPCA, however, the statutory language of Section 707 does not explicitly confer a private right of action. "[T]he mere existence of a violation of a code or statute does not automatically confer" a private right of action. *Greylag 4 Maint. Corp. v. Lynch-James*, 2004 Del. Ch. LEXIS 145, *31 (Del. Ch. Oct. 6, 2004).

Absent an express statutory authorization, Delaware utilizes a three-part test to determine whether an implied private right of action exists under a statute. *Id*. A court must consider whether (1) the plaintiff is one of a class for whose benefit the statute was enacted,

(2) whether there is any indication of a legislative intent, explicit or implicit, either to create a private right of action or to deny one, and (3) whether a private right of action is consistent with the underlying purposes of the legislative scheme.  *Heller v. Dover Whse. Mkt., Inc.*, 515 A.2d 178, 180 (Del. Super. Ct. 1986).  Here, a private right of action for monetary damages is inconsistent with the underlying purpose of 19 *Del. C.* § 707.  Instead, the statute appears to provide the Attorney General with an exclusive remedy to obtain a civil penalty of between $1,000 and $5,000 for violations.  19 *Del. C.* § 707(c).

The absence of a private cause of action under Section 707 is further supported by a comparison between it and the DWPCA.  Specifically, Section 1113 of the DWPCA explicitly enumerates the remedies available to employees and expressly authorizes a private cause of action.  19 *Del. C.* § 1113.  At the same time, Section 1112 of the DWPCA sets forth the civil penalties available for violations of the DWPCA.  19 *Del. C.* § 1112.  Section 1112(c) states, in pertinent part, that employers who are in violation of the DWPCA "shall be subject to a civil penalty of not less than $1,000 nor more than $5,000 for each such violation"- language that is virtually identical to the penalty provision contained in 19 *Del. C.* § 707(c).  The presence of a civil penalty provision in both Section 1112 and Section 707, and the absence of any language regarding remedies for individual employees under the latter statute, strongly supports the argument that a private remedy is not available for violations of Section 707.

At the very least, the determination of whether a private remedy under Section 707 is available is a novel question of law.  No Delaware court has addressed this issue and it makes little sense to require a district court to make this determination by predicting how a

Delaware state court might rule. Again, this provides a compelling reason for this Court to decline supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(c)(1).

### C. The State-Law Claims Substantially Predominate Over The FLSA Claim.

Another dispositive reason for this Court to decline the exercise of supplemental jurisdiction is because the state-law causes of action substantially predominate over Plaintiff's FLSA claim. *See*, 28 U.S.C. § 1367(c)(2). The Third Circuit in *De Asencio* found that where "the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *De Asencio*, 342 F.3d at 309 (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)).

#### 1. The state law claims are broader in scope and in terms of proof.

In *De Asencio*, the Third Circuit focused its inquiry on the terms of proof and scope of issues raised in the FLSA and Pennsylvania WPCL. *De Asencio*, 342 F.3d at 310. It noted that the Pennsylvania WPCL does not create a right to compensation, but rather provides a statutory remedy when the employer breaches a "contractual obligation" to pay earned wages. *De Asencio*, 342 F.3d at 310. The Third Circuit found that the additional testimony and proof necessary for the proposed class of plaintiffs to establish their contractual entitlement to wages under the Pennsylvania WPCL would substantially predominate over the more straightforward FLSA claims. *De Asencio*, 342 F.3d at 310. The same issue applies in the present case to Plaintiff's claims under Delaware's version of the WPCL.

As with Pennsylvania's WPCL, the DWPCA does not provide a statutory right to compensation.  Instead, it merely requires that employers "pay all wages due to the employer's employees on regular paydays," and provides penalties and a private right of action for the employer's breach of its contractual obligation to pay wages.  19 *Del. C.* §§ 1102, 1113.  Additionally, as with the WPCL, it is the contract between the employee and the employer that governs whether specific wages are earned.  *See*, 19 *Del. C.* § 1101(a)(4) (defining an "employee" as "any person suffered or permitted to work by an employer under a *contract* of employment either made in Delaware or to be performed wholly or partly therein.")(emphasis supplied).

Thus, where Plaintiff's FLSA claim requires no more proof than the wages paid and the time periods involved, proving the claim under the DWPCA will be much more fact intensive.  Each plaintiff will need to show the individual basis for the alleged contract formation and the agreed upon terms.  Theses issue are distinct and separate from whether a class of plaintiffs were denied overtime compensation for hours worked over forty in a workweek.  The difference in the state and federal wage laws and the *mere potential* that the state claims might predominate was enough to convince the Third Circuit in *De Ascenio* that the district court had abused its discretion in exercising supplemental jurisdiction.  *De Asencio*, 342 F.3d at 311 ("Because the FLSA claim does not require an intent to form a contract, individual questions of implied contract formation with respect to each member of the WPCL class might conceivably predominate over the issues common to the claims of the FLSA plaintiffs.")

The terms of proof and scope issues in the Delaware Meal Break Statute claim would also predominate over the FLSA claim.  Indeed, the claim for violation of the Meal Break

Statute has nothing whatsoever in common with the payment of wages to employees. 19 *Del. C.* § 707. Rather, Section 707 mandates that Delaware employers, subject to certain enumerated exceptions, provide "an unpaid meal break of at least 30 consecutive minutes, if the employee works 7 ½ or more consecutive hours." 19 *Del. C.* § 707(a). The statute provides further guidance on when during the work day the required meal break must be taken: "[t]he meal break must be given some time after the 1st 2 hours of work and before the last 2 hours." *Id.* There also are certain exemptions from the statute which may be applicable that excuse an employer from providing the break. *See* 19 *Del. C.* § 707(a)(1)-(4).

The individual facts necessary to support the Delaware Meal Break Statute claim will require a specific analysis of whether each plaintiff worked the requisite 7.5 hour shift to qualify for the break, whether he or she took the break, whether the Defendant was excused from the requirement to provide a break under the exceptions enumerated in 19 Del. C. § 707(a)(1)-(4), and whether the break was offered but the plaintiff chose to work instead. None of these factors have anything in common with Plaintiff's FLSA claim. Indeed, the only commonality between the operative facts of the Meal Break Statute claim and the FLSA claim is that they all arose in the context of the employment relationship with Defendant. Such a loose nexus was so tenuous that the Third Circuit, in *Lyon v. Whisman*, ruled that it was insufficient to make the state law claims part of the "same case or controversy" for purposes of conferring supplemental jurisdiction under 28 U.S.C. § 1367(a). *Lyon v. Whisman*, 45 F.3d at 758, 762 (3rd Cir. 1995) (finding that the "only link between Lyon's FLSA and state law claims" was "the general employer-employee relationship between the parties.") At a minimum, then, the individual questions with respect to each member of the

13

Meal Break Statute class will substantially predominate over the issues common to the FLSA class plaintiffs.

### 2.    The state law claims are broader in remedies.

Differences between the comprehensiveness of the remedies available under the DWPCA and the FLSA also exist and weigh against the exercise of supplemental jurisdiction over a large and amorphous state law opt-out class.  Specifically, the FLSA remedy sought here is only for overtime compensation for hours worked over 40 in a workweek, while the scope of the remedies available to a class of plaintiffs under the DWPCA is broader, encompassing the recovery of their purported contracts for unpaid wages.  19 *Del. C.* § 1113; *cf*., *De Asencio*, 342 F.3d at 310 n.13 (noting that "the FLSA remedy is only for overtime pay and the WPCL remedy is broader.").  Moreover, unlike the FLSA, the DWPCA does not itself provide a right to overtime compensation - instead, it merely provides for the timely payment of compensation that is due to employees pursuant to their "contract."  19 *Del. C.* § 1102; *De Asencio*, 342 F.3d at 311.  As in *De Asencio*, individual questions of contract formation with each of the plaintiffs in this case will likely predominate over the FLSA issues.

Even starker contrasts exist between the remedies available under the FLSA and the Meal Break Statute.  As previously addressed, Section 707 does not expressly authorize a private cause of action.  Instead, the sole remedy is limited to a "civil penalty" of up to $5,000 per violation. 19 *Del. C.* § 707(c).  Whatever remedies, if any, that are available under the Meal Break Statute have nothing in common with those afforded under the FLSA.

14

### 3. The size of the state claims classes would predominate over the federal class.

The relative difference in size between the state law "opt out" classes and the FLSA "opt in" class also militates against exercising supplemental jurisdiction. "Generally, the distinction between opt-in and opt-out classes is crucial. Under most circumstances, the opt-out class will be greater in number, perhaps even exponentially greater." *See De Asencio*, 342 F.3d at 311. As the Third Circuit has recognized, "the inordinate size of the state-law class, the different terms of proof required by the implied contract state-law claim, and the general federal interest in opt-in wage actions suggest the federal action is an appendage to the more comprehensive state action." *Id*. at 312. While "[p]redomination under Section 1367 generally goes to the type of claim, not the number of parties involved," in some circumstances, "the disparity in numbers of similarly situated plaintiffs may be so great that it becomes dispositive by transforming the action to a substantial degree, by causing the federal tail represented by a comparatively small number of plaintiffs to wag what is in substance a state dog." *Id.* at 311. The reality is that under the opt-out class mechanism both state law classes will inevitably predominate in size over the FLSA class of claimants.

In sum, the likely disparity in numbers between the FLSA opt-in class and the opt-out classes for both state law claims, the differences in the standard of proof, scope of issues, and the remedies available for the state law claims in comparison to the straightforward FLSA claim, as well as the congressional preference for limited opt-in actions, argue against the exercise of supplemental jurisdiction by this Court. Given the importance of these factors and the impact such rulings would have on the wage protection legal scheme in Delaware, the state claims should be dismissed without prejudice and left for resolution by state tribunals.

**D.    Plaintiff Should Not Be Permitted To Use Rule 23's Opt-Out Provisions As An End Run Around the FLSA's Clear Congressional Mandate of Collective Opt-In Actions.**

Finally, 28 U.S.C. § 1367(c)(4) permits the Court to decline the exercise of supplemental jurisdiction if "in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  Although the Third Circuit in *De Ascenio* did not rely on this provision in reaching its decision, it indicated that compelling reasons may exist to decline supplemental jurisdiction on this ground for cases involving state wage claims.  *See, De Asencio*, 342 F.3d at 309 n.12.  One of those reasons is the risk of certifying a class of state law claimants -- some of whom will decline to opt-in to the FLSA class.  The end result is that many of the state law class claimants would be a party to a federal lawsuit *without* any basis for federal jurisdiction.  This lawsuit presents just such a circumstance.

The three distinct claims brought by the Plaintiff on behalf of others leads to the high probability that there will be at least three classes of plaintiffs using two different class mechanisms.  "The principal difference between FLSA class actions and Fed. R. Civ. P. 23 class actions is that prospective plaintiffs under the FLSA must consent to join the class." *De Asencio*, 342 F.3d at 306.   However, since there is no assurance that every member of the Rule 23 class will opt in to the FLSA class, there is a real possibility that more than one class of plaintiffs will exist in this case.

The mere possibility that the state and federal claims would be pursued by two different classes of plaintiffs was enough justification for the court in *Zelaya v. J.M. Macias, Inc.* to decline jurisdiction over a state wage payment act claim.  999 F. Supp. 778, 782 (E.D.N.C. 1998).   In *Zelaya*, the plaintiffs brought a claim for overtime under the FLSA and a claim for unpaid wages under the North Carolina Wage and Hour Act.  As here, the

16

plaintiffs sought class certification under both the FLSA and Fed. R. Civ. P. 23. *Zelaya*, 999 F. Supp. at 782.

The *Zelaya* court recognized that the dichotomy between the FLSA's opt-in procedures and the opt-out procedures in Rule 23 creates the possibility that two separate classes could exist. 999 F. Supp. at 782 ("There is no assurance that every member of the Rule 23 class will opt in to the FLSA class. Therefore, two different classes could exist."). The court found that "[t]he distinct possibility of two separate sets of plaintiffs" constituted an "exceptional circumstance" under 28 U. S. C. § 1367(c)(4) prompting it to decline supplemental jurisdiction over the state wage claims. *Zelaya*, 999 F. Supp. at 783.

Here, the risk of multiple classes faced by this Court is even greater than in *Zelaya*. Retaining jurisdiction over the state law claims will require the Court to resolve the FLSA claims for opt-in plaintiffs in one proceeding, and then have a second and third proceeding to address the two distinct Rule 23 classes for the claims under the DWPCA and Meal Break Statute. This result runs contrary to the rationale for allowing district courts to exercise supplemental jurisdiction. *See Gibbs*, 383 U.S. at 726 (supplemental jurisdiction promotes "judicial economy, convenience and fairness to litigants.").

The concerns expressed in *Zelaya* have prompted other district courts to refuse to certify state-law wage and hour classes in which the individual class members in the case are claiming relief only under state law and lack any federal claims. *See Foster v. The Food Emporium*, 2000 U.S. Dist. LEXIS 6053, *8-9 (S.D.N.Y. April 26, 2000) ("It would be improper to bring persons who have no Federal claims that they can assert into this Court under the guise of a collective action so they can pursue State law claims that they can only bring on their own and not collectively."); *Isaac v. Wm. H. Pflaumer & Sons, Inc*., 1990 U.S.

17

Dist. LEXIS 8892, *5 n.3 (E.D. Pa. July 17, 1990) (declining to exercise pendent party jurisdiction over state wage-and-hour law class action); *see also, Pirrone v. North Hotel Assocs.*, 108 F.R.D. 78, 84 (E.D. Pa. 1985) ("I do not believe that a plaintiff may assert claims under the [Pennsylvania] WPCL on the basis of jurisdiction pendent to claims under the FLSA unless those claims are asserted on behalf of a party plaintiff who has filed a written consent… This court, absent diversity jurisdiction, appears to have no power to entertain [Pennsylvania] WPCL claims on behalf of parties who do not assert FLSA claims.").

An overriding concept in all of these cases is that the limited scope of the FLSA makes it inherently more susceptible to predomination by state law claims.  The Third Circuit in *De Asencio* found that one of the interests supporting "relegating the [Pennsylvania] WPCL claims to state court is Congress's express preference for opt-in actions for the [FLSA claim]."  *De Asencio*, 342 F.3d at 310; 29 U.S.C. § 216(b).  The FLSA's opt-in procedures were adopted by Congress in response to the "thousands of portal-to-portal lawsuits" filed by employees under the FLSA following its enactment in 1947.  *See De Asencio*, 342 F.3d at 306.  Faced with a veritable flood of FLSA litigation, Congress "sought to define and limit the jurisdiction of the courts through the Portal-to-Portal Act."  *Id*.  Although the Portal-to-Portal Act permitted actions by "one or more employees for and in behalf of himself or themselves and other employees similarly situated," it contained the express opt-in provision codified at 29 U.S.C. § 216(b).  *De Asencio*, 342 F.3d at 306.  The goal of this provision was to limit participation in the lawsuit to those who affirmatively give their "consent in writing to become a party."  29 U.S.C. § 216(b).

DB02:6005376.2                                                                                                              061442.1002

Allowing the Plaintiff's state-law claims to proceed in a federal venue as a Rule 23 opt-out class action essentially circumvents Congress's express preference to limit FLSA class actions to those who affirmatively choose to "opt-in."  Indeed, the Congressional intent of requiring FLSA plaintiffs to opt-in would essentially "be thwarted if a plaintiff were permitted to back door the shoe homing in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement." *Leuthold v. Destination America, Inc*., 224 F.R.D. 462, 470 (N.D. Cal. 2004) (*quoting Rodriguez v. The Texan. Inc*, 2001 U.S. Dist. LEXIS 24652, *3 (N.D. Ill. 2001)).  For these reasons, supplemental jurisdiction should not be exercised in this case.

## CONCLUSION

There are a plethora of compelling reasons for this Court to decline to exercise supplemental jurisdiction over the Plaintiff's state-law claims. The state law claims present novel and complex issues which have not been addressed by a Delaware state court. The state claims also will substantially predominate over the federal claim based on the differences in the standards of proof, the scope of issues, the remedies available for the state law claims in comparison to the straightforward FLSA claim, the likely disparity in size of the federal opt-in class and the two state-law opt-out classes, and the concerns regarding the exercise of jurisdiction over individual members of the state-law classes who have not opted into the FLSA class. All of these reasons favor dismissal of the state law claims without prejudice. For the foregoing reasons, the Defendant respectfully requests that the Court grant its motion to dismiss.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/   *Scott A. Holt*

Sheldon N. Sandler (No. 0245)
Scott A. Holt, Esquire (No. 3399)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19899-0391
Telephone: (302) 571-6673; (302) 571-6623
Facsimile: (302) 576-3330; (302) 576-3299

Attorneys for Defendant

Dated: June 5, 2007

Service: Get by LEXSEE®
Citation: 1985 Del. Super. LEXIS 1045

1985 Del. Super. LEXIS 1045, *

Local 435 v. General Motors Corp.

C.A. No. 83C-DE-79

Superior Court of Delaware

1985 Del. Super. LEXIS 1045

May 24, 1985, Submitted
August 8, 1985, Decided

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff labor union and defendant corporation filed motions for summary judgment in an action brought by the labor union, which challenged a provision of the collective bargaining agreement that allowed the corporation to deduct from future earnings any amount of holiday overpayment received by an employee that was caused by the employee's receipt of unemployment benefits.

**OVERVIEW:** The corporation instituted layoffs over the Christmas holiday and required the employees to execute an authorization that allowed the company to recover from future wages the amount of holiday overpayment collected by the employees through the collection of unemployment benefits. The labor union brought an action against the corporation challenging this practice. The parties filed motions for summary judgment, and the corporation's motion was converted to a motion to dismiss, which was granted in part and denied in part. The court found that the union failed to state a claim for recovery under Del. Code Ann. tit. 19, §§ 1103(d) and 1107. The unemployment compensation laws prohibited discrimination and the court found that the corporation distinguished those who filed for benefits from those who did not. The latter received full holiday pay while the former had either reduced holiday pay or suffered subsequent deductions from their pay. This was prohibited by Del. Code Ann. tit. 19, § 3371(c). The court found that the employees' proper remedy was the collective bargaining agreement.

**OUTCOME:** The court granted the corporation's motion for summary judgment in part and denied it in part, in the labor union's action challenging a provision of the collective bargaining agreement. The court found that the forum for the determination of damages was the collective bargaining agreement.

**CORE TERMS:** holiday, unemployment compensation, authorization, unemployment benefits, eligibility, void, Del Laws, summary judgment, unemployment, indirectly, legality, waive, international union, collective bargaining agreement, amount equal, fail to state, contract clause, discriminating, encumbrance, liquidated, settlement, collection, severance, indirect, lesser, unpaid, pledge, discriminate, employee's right, standing to bring

### LexisNexis® Headnotes ♦ Hide Headnotes

Civil Procedure > Justiciability > Standing > General Overview
Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview
Labor & Employment Law > Wage & Hour Laws > Remedies > Liquidated Damages

HN1 Del. Code Ann. tit. 19, § 1113(a), provides that: A civil action to recover unpaid wages and liquidated damages may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or

themselves, or such employee or employees may designate an agent or representative to maintain such action.  More Like This Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Subjects of Bargaining
Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Holiday, Sick & Vacation Pay

HN2 The term "wages," as used in Del. Code Ann. tit. 19, § 11, does not include holiday pay.  More Like This Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Enforcement
Labor & Employment Law > Disability & Unemployment Insurance > General Overview

HN3 Del. Code Ann. tit. 19, § 3371(a) provides that any agreement by an individual to waive, release or commute his rights to benefits, or any other rights under this chapter shall be void.  More Like This Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Enforcement
Labor & Employment Law > Disability & Unemployment Insurance > General Overview
Labor & Employment Law > Wage & Hour Laws > Assignments, Deductions & Garnishments

HN4 Del. Code Ann. tit. 19, § 3371(c) provides as follows: No employer shall directly or indirectly make or require or accept any deduction from wages to finance the employer's assessments required from him, require or accept any waiver of any right hereunder by any individual in his employ, willfully or intentionally discriminate in regard to the hiring or tenure of work on any term or condition of work of any individual on account of his claiming benefits under this chapter or in any manner obstruct or impede the filing of claims for benefits.  More Like This Headnote

Governments > Legislation > Interpretation

HN5 Every section of a statute is included for a purpose, and the legislative intent must be taken from review of the entire statute.  More Like This Headnote

Governments > Legislation > Interpretation
Labor & Employment Law > Disability & Unemployment Insurance > Unemployment Compensation > Benefit Entitlements
Labor & Employment Law > Disability & Unemployment Insurance > Unemployment Compensation > Coverage & Definitions

HN6 The legislature intended Del. Code Ann. tit. 19, § 3371(c) to prevent an employer from using a creative scheme to avoid unemployment benefits.  More Like This Headnote

Labor & Employment Law > Disability & Unemployment Insurance > Unemployment Compensation > Coverage & Definitions
Labor & Employment Law > Employment Relationships > At-Will Employment > Employees

HN7 Any attempt to distinguish one group of employees from another on the basis of filing for unemployment is impermissible under Del. Code Ann. tit. 19, § 3371 (c).  More Like This Headnote

**COUNSEL:** [*1] Stephen B. Potter, Esq., David R. Hodas, Esq., Potter & Carmine, P.O. Box 1207, Wilmington, DE 19899

Richard G. Elliott, Jr., Esq., William W. Bowser, Esq., Richards, Layton & Finger, P.O. Box 551, Wilmington, DE 19899

**OPINION BY:** BIFFERATO

**OPINION**

VINCENT A. BIFFERATO, *JUDGE*

Get a Document - by Citation - 1985 Del. Super. LEXIS 1045     Page 3 of 9

Case 1:07-cv-00262-GMS     Document 5-2     Filed 06/05/2007     Page 3 of 36
UNREPORTED OPINION

Now before the Court are General Motors' (hereinafter "G.M.") and Local 435 of the International United Automobile Aerospace and Agricultural Implement Workers of America's (hereinafter "Local 435") motions for summary judgment. See Super.Ct.Civ.R. 12b (converting G.M.'s motion to dismiss to a Super.Ct.Civ.R. 56 motion for summary judgment).

This action arises out of layoffs at G.M.'s Boxwood Road plant in December, 1980. The heart of the controversy is paragraph 213(a) of the collective bargaining agreement (hereinafter "National Agreement"), entered into by G.M. and Local 435's international union. Paragraph 213(a) provides as follows:

(213a) It is the purpose of the Holiday Pay Provisions in Paragraphs (203) and (213) of this Agreement to enable eligible employes [sic] to enjoy the specified holidays with full straight time pay. If, with respect to a week included in the **[*2]** Christmas Holiday Period, an employe [sic] supplements his Holiday Pay by claiming and receiving an unemployment compensation benefit, or claims and receives waiting period credit, to which he would not have been entitled if his Holiday Pay had been treated as remuneration for the week, the employe [sic] shall be obligated to pay to the Corporation the lesser of the following amounts:

(a) an amount equal to his Holiday Pay for the week in question, or,

(b) an amount equal to either the unemployment compensation paid to him for such week or the unemployment compensation which would have been paid to him for such week if it had not been a waiting period.

The Corporation will deduct from earnings subsequently due and payable the amount which the employe [sic] is obligated to pay as provided above.

The layoff was scheduled to coincide with the Christmas holiday period. On December 3, 1980, G.M., on advice of counsel, gave notice to its employees that each would be required to execute an authorization allowing that holiday pay overpayments caused by an employee collecting unemployment benefits and holiday pay, be recovered from future wages. Fifty-six percent of the employees **[*3]** signed the authorization and received full holiday pay. The 43% who refused to sign the authorization were presumed to have elected to file for unemployment compensation. G.M. deducted $150 from those employees' pay periods for each of the weeks they were coincidentally entitled to unemployment compensation and holiday pay. If the employee could prove he did not get unemployment compensation, then G.M. would pay the withheld funds.

On December 12, 1980, Local 435 filed a complaint in District Court for the District of Delaware. Local 435 also moved for a temporary restraining order. The first of four counts was for breach of the National Agreement. The remaining counts are essentially the same claims asserted before this Court.

The parties settled the first count on May 20, 1982. On December 12, 1982, the District Court dismissed the action declining to hear the pendent state law claims. The Third Circuit subsequently ordered the District Court to modify its order, thereby dismissing the pendent claims as moot.

G.M. has moved for summary judgment (see Super.Ct.Civ.R. 12b) on three grounds: (1) Local 435 lacks standing to bring this action; (2) paragraphs 14 and 15 **[*4]** of the complaint, asserting a violation of 19 Del.C. c. 11, fail to state a claim; and (3) paragraphs 16, 17, and 18 of the complaint, challenging the legality of paragraph 213(a) of the National Agreement under Delaware law, fail to state a cause of action. In turn, Local 435 has moved for summary judgment on the issue of the legality of paragraph 213(a) of the National Agreement.

Get a Document - by Citation - 1985 Del. Super. LEXIS 1045    Page 4 of 9

Case 1:07-cv-00262-GMS    Document 55-2    Filed 06/05/2007    Page 4 of 36

Standing

G.M. avers that Local 435 is without standing in this matter. [HN1] 19 Del.C. § 1113(a), as it existed in December, 1980, [1] provided that:

(a) A civil action to recover unpaid wages and liquidated damages may be maintained in any court of competent jurisdiction by any 1 or more employees for and in behalf of himself or themselves, or such employee or employees may designate an agent or representative to maintain such action.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

1 The Court is cognizant of the fact that the Delaware General Assembly has amended 19 Del.C. § 1113(a) deleting the provision in question here. 64 Del.Laws c. 226 §§ 2, 3. In the absence of language making the amendment retroactive, the change is merely a change and is not to be construed so as to apply to an action, such as this, that predates the amendment. Christopher v. Planet Insurance Co., Del.Super. 321 A.2d 128 (1974); 1A Sutherland Statutory Construction § 22.36. All references to 19 Del.C. § 1113, unless otherwise noted, are to the pre-1984 amendment version of the statute.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

 [*5]  G.M. argues that since the employees did not formally designate Local 435 as their agent or representative in this action, the Local is without standing to go forward in this matter. Local 435 counters that Article 6, § 16 of the Constitution of the International Union is an express authorization to bring this suit. Section 16 reads as follows:

Section 16. The International Union and the Local Union to which the member belongs, and each of them, are by her/him irrevocably designated, authorized and empowered exclusively to appear and act for the member and in her/his behalf before any board, court, committee or other tribunal in any matter affecting her/his status as an employe [sic] or as a member of her/his Local Union or the International Union, and exclusively to act as the member's agent to represent and bind her/him in the presentation, prosecution, adjustment and settlement of all grievances, complaints or disputes of any kind or character arising out of the employer-employe [sic] relationship, as fully and to all intents and purposes as s/he might or could do if personally present. [Emphasis added].

The Court finds that the quoted passage is an express authorization **[*6]**  for Local 435 to maintain this action.Had the legislature intended a special designation, it would have required the same be done in writing. See, e.g., 19 Del.C. § 1113(b) (requiring the employee to request in writing that the Department of Labor bring an action on the employee's behalf). G.M.'s assertion that the action takes on the characteristics of a class action suit is spurious, given that the legislature authorized such an action in enacting 19 Del.C. § 1113.

G.M.'s second argument is that Local 435 has failed to meet the requirement of Super.Ct.Civ.R. 17(a) which requires that every action must be prosecuted in the name of the "real party in interest." Cammile v. Sanderson, Del.Super., 101 A.2d 316 (1953). G.M. claims that this suit is brought to enforce the employee's statutory right, and not the contract rights.

The fallacy in this argument is the characterization that the Union is seeking to enforce a statutory right. The essence of the Union's complaint is that G.M. failed to make full holiday payments as required by paragraphs 203-213 of the National Agreement. The Union is asserting statutory remedies to attain the contract right. The statutes **[*7]**  relied upon by the Union do not establish a right to holiday pay; rather, the statutes establish a remedy for situations where agreed-upon holiday pay is not tendered in a timely fashion. See 19 Del.C. (c. 1).

G.M.'s reliance on Cammile is misplaced. In that case the plaintiff attempted to make himself a real party in interest by virtue of having title to a car in his own name rather than in the name of the true owner. The rights which Local 435 seeks to enforce here arise out of and are the legal consequence of the collective bargaining contract. Local 435 seeks to enforce the promises made by the employer to Local 435 for the benefit of the members of Local 435 employed under the contract. United Steel Workers of America v. Copperweld Steel Co., 230 F.Supp. 383 (W.D. Pa. 1964). Thus, Local 435 is seeking to enforce a contract it made, in its own name, with G.M. for the benefit of those employed thereunder. This satisfies Super.Ct.Rule 17(a). ²

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - - -

2 G.M.'s concerns regarding the multiplicity of suits is unfounded. G.M. can, through discovery, determine which Union members the Local is representing. This would also provide a method by which G.M. could counterclaim against those members against whom G.M. has a defense. If the Local were found not to have standing, G.M. would then face a multitude of suits (one for each aggrieved employee), the very evil G.M. seeks to avoid.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

 **[*8]**  Local 435 has standing to bring this suit under 19 Del.C. § 1113(c) and Super.Ct.Civ.R. 17(a).Given this holding, there is no need to dismiss the Local's argument regarding 29 U.S.C. § 185.

19 Del.C. c. 11 Claims

In paragraph 14 and 15 of the complaint, Local 435 asserts that the actions of G.M. taken to affect paragraph 213(a) of the National Agreement, violate sections 1103(d) and 1107 of the Delaware Wage and Payment Collection Act, 19 Del.C. §§ 1103(d) and 1107.

19 Del.C. § 1103(d) reads as follows:

(d) If an employer, without any reasonable grounds for dispute, fails to pay an employee wages, as required under this chapter, the employer shall, in addition, be liable to the employee for liquidated damages in the amount of 10 percent of the unpaid wages for each day, except Sunday and legal holidays, upon which such failure continues after the day upon which payment is required or in an amount equal to the unpaid wages, whichever is smaller, except that, for the purpose of such liquidated damages, such failure to pay shall not be deemed to continue after the date of the filing of a petition in the bankruptcy with respect to the employer if he **[*9]**  is adjudicated bankrupt thereupon. An employer who is unable to prepare the payroll due to a labor dispute, power failure, blizzard or like weather catastrophe, epidemic, fire or explosion shall not be deemed to have violated this chapter. (19 Del.C. 1953, § 1103; 55 Del.Laws, c. 19, § 1; 57 Del.Laws, c. 152, § 3.) (Emphasis added).

19 Del.C. § 1107 reads as follows:

No employer may withhold or divert any portion of an employee's wages unless:

(1) The employer is required or empowered to do so by state or federal law; or

(2) The deductions are for medical, surgical or hospital care or service, without financial benefit to the employer, and are openly, clearly and in due course recorded in the employers' books; or

(3) The employer has a signed authorization by the employee for deductions for a lawful purpose accruing to the benefit of the employee, except that the Department, upon finding that it is acting in the public interest, may, by regulation, prohibit such withholding or diverting for such purpose. If the Department abuses its discretion and acts arbitrarily and

Get a Document - by Citation - 1986 Del. Super. LEXIS 1045

Case 1:07-cv-00262-GMS    Document 32    Filed 06/05/2007    Page 6 of 9    Page 6 of 9

without any reasonable ground, any aggrieved person may institute a civil action in the **[*10]** Superior Court to have such regulation declared null and void. The Department, in such action, shall not be liable for costs or fees of any nature. (Emphasis added).

The crucial determination in evaluating this claim is whether the holiday pay provisions in the National Agreement are wages within the meaning of 19 Del.C. c. 11. There are two Delaware cases on this issue, General Motors Corp. v. Crishock, Del.Supr., 287 A.2d 648 (1972), and Department of Labor, ex rel. Commons v. Green Giant, Del.Super., 394 A.2d 753 (1978).

In Crishock, the Court confronted the issue of whether holiday pay was wages within the meaning of 19 Del.C. c. 33 which governs the employee's eligibility for unemployment compensation. The Court held that wages did not include holiday pay, and thus employees were, if the other requirements were met, eligible for unemployment compensation. Crishock, supra; 19 Del.C. § 3302(17)(18). [3]

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

[3] The Court notes that 19 Del.C. § 3307(17)(18) have been amended so that holiday pay is now considered wages. 63 Del.Laws c. 76. This issue is therefore moot under the present statutory scheme.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In Green Giant, this Court **[*11]** was faced with the question of whether severance pay constitutes wages under 19 Del.C. § 1101. The Court found that the word "wages" was used in 19 Del.C. c. 11 to "refer to the regular direct compensation which would ordinarily be paid at the end of each period of a certain number of work days. In the statute the word is used interchangeably with the word 'pay'. The usage in the statute does not adapt itself to the concept that 'wages' include nonrecurrent benefits such as severance pay." Green Giant, supra, at 755. In Green Giant, Judge Taylor, after discussing the alternative implications of § 1109, held that the enactment of § 1109 did not expand the meaning of "wages" as used in chapter 11. Id. at 756.

Judge Taylor's rationale in Green Giant is equally applicable in the present action. § 1109 includes holiday pay in the same clause as separation pay. It cannot be gainsaid that holiday pay is distinct from "regular direct compensation" and does not fall within the above definition of "wages." Local 435's contention, that because holiday pay is annual payment arising out of the employment relationship, and is distinct from severance or **[*12]** separation pay, is without force. The fact that holiday pay recurs annually does not alter the nature of the payment so as to be a direct compensation for services rendered. This is in harmony with the Delaware case law on vacation pay, Employment Security Commission v. Watts, Del.Supr., 254 A.2d 230 (1969), and holiday pay, Crishock, supra. There is no indication that the General Assembly intended the benefits and wage supplements as defined in 19 Del.C. § 1109 to be treated differently from one another.

It is the holding of this Court that [HN2] the term "wages," as used in 19 Del.C. c. 11, does not include holiday pay. Thus, Local 435 has failed to state a claim for recovery under 19 Del.C. §§ 1103(d) and 1107. If G.M. has failed to pay the proper amount of holiday pay, the Union may proceed as directed in 19 Del.C. § 1109(b), or, if necessary, under 19 Del.C. § 1113. See Green Giant, supra, pp. 756-757.

Paragraph 213(a)

Local 435 challenges the legality of paragraph 213(a) of the National Agreement under Delaware law as it existed in 1980. The Local asserts that the contract clause violates 19 Del.C. §§ 3371(a), 3371(c) **[*13]** and 3374.

[HN3] 19 Del.C. § 3371(a) provides that "any agreement by an individual to waive, release or

commute his rights to benefits, or any other rights under this chapter shall be void." Local 435 argues that paragraph 213(a) acts as an indirect waiver of unemployment benefits. This argument is without merit. The plain language of paragraph 213(a) is that employees will be guaranteed their right to unemployment compensation. The cases cited by the Local are wholly inapposite. In each case a contract clause was asserted as a block to eligibility for benefits. See Green v. Republic Steel Corp., N.Y.Ct.App., 338 N.E.2d 594 (1975) (contract provision which required senior employees who were laid off to accept alternate lesser employment or lose eligibility for unemployment benefits constituted a waiver of such benefits); Keystone Steel & Wire Div., Keystone Consol. Indus. v. Illinois Department of Labor, Ill.App., 346 N.E.2d 379 (1976) (court held in situation similar to Green, supra, that the employer was mandated to offer lesser work. However, the employee was not required to accept; instead, his eligibility for benefits would turn on whether the refusal [*14] of work was for good cause); Johns-Manville Prod. Corp. v. Board of Review, etc., Del.Super., 300 A.2d 572 (1973) (same issue as Keystone, supra, and Green, supra); In Re George's Claim, N.Y.Ct.App., 199 N.E.2d 503 (1964) (contract clause which made date of settlement of local strike dependent on settlement of national and/or local strikes elsewhere amounted to a conditional waiver of rights, because striking workers were ineligible to collect unemployment benefits); Western Electric Co. v. Industrial Commission, Mo.Ct.App., 489 S.W.2d 475 (1973) (statement that employees were required to sign stating that they were "voluntarily unemployed" during a vacation period was an impermissible attempt to have the employee waive his benefits); Southwestern Bell Telephone Co. v. Employment Security Board of Review, Kan.Supr., 502 P.2d 645 (1972) (negotiated mandatory permanent retirement at age 65 is void in so far as it is asserted as an obstacle to unemployment compensation as it is tantamount to a waiver of benefits); In Re Interrogatories by Industrial Commission, Col.App., 496 P.2d 1064 (1972) (eligibility for unemployment compensation cannot be denied [*15] because an employment contract specified that the position as a private school cook ended in June. The assertion of the contract provision to deny eligibility for benefits was an attempt to enforce a waiver and thus void). In the present case, the record reveals that G.M. did not oppose, nor was any employee denied, eligibility for benefits as a result of paragraph 213(a).

Local 435 next attempts to avoid paragraph 213(a) by arguing that it violates 19 Del.C. § 3374. 19 Del.C. § 3374 provides as follows:

Any assignment, pledge or encumbrance of any rights to benefits which are or may become due or payable under this chapter shall be void. Such rights to benefits shall be exempt from levy, execution, attachment or any other remedy whatsoever provided for the collection of debt. Benefits received by any individual, so long as they are not mingled with other funds of the recipient, shall be exempt from any remedy whatsoever for the collection of all debts except debts incurred for necessaries furnished to such individual or his spouse or dependents during the time when such individual was unemployed. Any waiver of any exemption provided for in this section shall [*16] be void. (Emphasis added).

The statute is clear that it only prohibits assignment, pledge or encumbrance of any right to benefits. In the present case the assignment, pledge or encumbrance is of holiday pay, not unemployment benefits. The statute does not contain language to the effect of "directly or indirectly" which would then broaden the prohibition in 19 Del.C. § 3374. See, e.g., 19 Del.C. § 3371(c). Thus, Local 435 has no right to recover under § 3374.

Local 435 asserts that 19 Del.C. § 3371(c) prohibits G.M. from (a) deducting funds from the holiday pay to offset funds received by the employee as unemployment benefits; (b) accepting the waiver of rights; and (c) discriminating in regard to a term or condition of work on account of claiming unemployment benefits. HN4 § 3371(c) provides as follows:

No employer shall directly or indirectly make or require or accept any deduction from wages to finance the employer's assessments required from him, require or accept any waiver of any right hereunder by any individual in his employ, willfully or intentionally discriminate in regard to the hiring or tenure of work on any term or condition of work of any [*17] individual on account of his claiming benefits under this chapter or in any manner obstruct or

Get a Document by Citation 1985 Del.Super. LEXIS 1045

Case 1:07-cv-00282-GMS    Document 9-2    Filed 06/05/2007    Page 8 of 39    Page 8 of 9

impede the filing of claims for benefits.

The reduction in holiday pay does not contravene the prohibition in § 3371(c) that the employer not deduct from wages to finance G.M.'s assessments. Wages, as defined in 19 Del.C. c. 33, [4] do not include holiday pay. Local 435 implicitly argues that wages, as used in § 3371(c), should include holiday pay. This contention will not stand. The legislature defined the term "wages," 19 Del.C. § 3302(18)(E), and unless the context of the statute clearly requires a different definition, this Court may not redefine the term. See 19 Del.C. § 3302. To hold otherwise would give one definition of wages in regard to eligibility, and a second contradictory definition under § 3371.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

[4] 19 Del.C. c. 33 was amended in June, 1981 to include holiday pay within the statutory definition of "wages." 19 Del.C. § 3302(17); 163 Del.Laws c. 76, the effect of which was to make the employees in this suit ineligible for holiday pay. Reference herein to 19 Del.C. c. 33 is, unless otherwise noted, to the preamendment version of the statute.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

 **[\*18]**  The Local asserts that the authorization form which G.M. sent to its employees, and which was returned by 56% of the employees, is the acceptance of a waiver of the right to benefits under 19 Del.C. c. 33. G.M. asserts that the authorization form did not interfere with or amount to a waiver of the employee's right to unemployment. G.M., in essence, argues that this portion of § 3371(c) duplicates § 3371(a). This Court cannot agree. *HN5* Every section of the statute is included for a purpose, and the legislative intent must be taken from review of the entire statute. Nationwide Insurance Co. v. Graham, Del.Supr., 451 A.2d 832 (1982); Green Giant, supra. § 3371(a) prohibits any express waiver of unemployment. The pertinent part of § 3371(c) reads:

No employee shall directly or indirectly . . . require or accept any waiver of any right hereunder by any individual in his employ. . . .

The legislature is presumed to have intended that every section of a statute was included for a purpose and is intended to have a different meaning other than being redundant. 73 Am.Jur.2d, Statutes, § 250. It is the opinion of this Court that *HN6* the legislature intended **[\*19]**  § 3371(c) to prevent an employer from using a creative scheme to avoid unemployment benefits. This interpretation is consistent with the balance of the statute. Application of Penny Hill Corp., Del.Supr., 154 A.2d 888 (1954). § 3371(a) prevents express agreements to waive rights; § 3371(b) and (c) prevent the employer from taxing an employee's wages to pay the employee's compensation; and § 3371(c) also prohibits an employer from discriminating against an employee because he filed for benefits. (See discussion infra). § 3371, as construed here, prevents the employer from shifting his responsibility under 19 Del.C. c. 33 to the employee.

The authorization form reads as follows:

I hereby authorize General Motors Corporation to make payroll deductions of amounts determined under Paragraph 213(a) of the GM-UAW National Agreement with respect to any week included in the Christmas Holiday period for which I claim and receive an unemployment compensation (UC) benefit and which would result in an overpayment of Holiday Payment had such Holiday Pay been treated as remuneration by the State UC Agency for such week. This authorization of deduction is executed for **[\*20]**  my own benefit for the purpose of assuring that I will receive Holiday Pay consistent with the intent and purpose of the GM-UAW National Agreement.

This authorization is clearly not an express agreement to waive rights to unemployment benefits. However, it is equally clear that the employee is indirectly waiving his right to collect benefits. He is required to remit any benefits he would receive as a result of filing for

unemployment compensation. Thus, G.M. accepted an indirect waiver of each employee's right to benefits under 19 Del.C. c. 33 in direct contravention of 19 Del.C. § 3371(c).

Finally, Local 435 argues that G.M. discriminates as to the amount of holiday pay an employee receives by making the amount received dependent upon whether or not the employee files for unemployment. G.M. responds that they did not discriminate because all employees received the same net benefit. The Court cannot accept this rationale.

The statute prohibits discrimination in regard to a term or condition of work as a result of the employee filing for unemployment benefits. The statute provides no exceptions. Thus, *HN7* any attempt to distinguish one group of employees from another **[*21]** on the basis of filing for unemployment is impermissible under 19 Del.C. § 3371(c). The Court is not unmindful of the fact that G.M. was attempting to treat all employees equally and maintain the spirit of the unemployment compensation laws. However, the statute prohibits discrimination. G.M. distinguished those who filed for benefits from those who did not. The latter received full holiday pay, while the former either had their holiday pay reduced or suffered subsequent deductions from their pay. This is discrimination based on filing for benefits and is prohibited by 19 Del.C. § 3371(c).

In summary, paragraph 213(a) and the authorization form utilized to implement the contract, violate 19 Del.C. § 3371(c) by (a) discriminating against employees who filed for benefits by giving them less holiday pay; and (b) by accepting the authorization form which is an indirect waiver of benefits. These violations have resulted in the underpayment of holiday pay pursuant to the contract. Thus, the employees' proper remedy is the collective bargaining agreement. 19 Del.C. § 1109(b). If the remedies under the collective bargaining are inadequate, then the Union shall **[*22]** proceed under 19 Del.C. § 1113(a). See Green Giant, supra.

Summary judgment is granted to G.M. in so far as it claims that paragraphs 14 and 15 of the complaint fail to state a cause of action. The motion is denied as to the claims under paragraphs 16, 17, and 18 of the complaint. Local 435's motion for summary judgment as to the legality of paragraph 213(a) is granted, and paragraph 213(a) is declared void under Delaware law. The issue of damages must still be decided. The proper forum for determination of money owed in the case of an underpayment is under the collective bargaining agreement. 19 Del.C. § 1109(b). This action is stayed pending resolution of the grievance proceedings.

IT IS SO ORDERED.

Service: **Get by LEXSEE®**
Citation: **1985 Del. Super. LEXIS 1045**
View: Full
Date/Time: Tuesday, June 5, 2007 - 11:57 AM EDT



About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Service: **Get by LEXSEE®**
Citation: **1993 del ch. lexis 170**

*1993 Del. Ch. LEXIS 170, *

Bernadette King Mossman v. CNC Insurance Associates, Inc.,

C.A. No. 1202-K

COURT OF CHANCERY OF DELAWARE, NEW CASTLE

1993 Del. Ch. LEXIS 170

August 19, 1993, Decided

**DISPOSITION: [*1]** The pending motion to strike is denied.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant employer brought a motion to strike directed towards plaintiff employee's claims asserted to arise under Del. Code Ann. tit. 19, §§ 1103 (b) and 1101(a)(2) in her application under Del. Code Ann. tit. 10, § 5713 seeking to confirm an arbitration award, and for statutory damages and attorney's fees.

**OVERVIEW:** The employee filed an application under § 5713 to confirm an arbitration award, and also sought statutory damages and the award of attorney's fees against the employer, who brought a motion to strike directed towards the employee's claims asserted under Del. Code Ann. tit. 19, §§ 1103(b) and 1101(a)(2). The court denied the motion to strike, holding that the existence of the statutory claim did not affect the terms of the arbitral award. Claims under the Delaware Wage Payment and Collection Act (WPCA) were claims for money owed. The action at law for breach of contract provided a full and complete remedy for actions for wages, and before the WPCA was enacted, such claims were brought in the law courts. Thus, the court had no jurisdiction over such claims pursuant to Del. Code Ann. tit. 10, § 342. The court held that the WPCA did not expand its jurisdiction. However, the court held that it did take jurisdiction over the entirety of the dispute between parties in the interests of judicial economy, because they were validly before it.

**OUTCOME:** The court denied the employer's motion to strike in the employee's action seeking the confirmation of an arbitration award and statutory damages and the award of attorney's fees.

**CORE TERMS:** arbitrator's, arbitration, arbitral, arbitration award, miscalculation, confirm, Collection Act, confirmation, promptly, plainly, Arbitration Act, modified, evident, modify

### LexisNexis® Headnotes ♦ Hide Headnotes

Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview
Civil Procedure > Alternative Dispute Resolution > Mandatory ADR
Contracts Law > Contract Conditions & Provisions > Arbitration Clauses
*HN1* Under Del. Code Ann. tit. 10, §§ 5701 and 5702 a court of chancery is granted jurisdiction to enforce arbitration agreements. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview
Civil Procedure > Alternative Dispute Resolution > Judicial Review
Labor & Employment Law > Collective Bargaining & Labor Relations > Judicial Intervention
*HN2* The arbitration procedure is a voluntary non-judicial dispute resolution mechanism

that is favored by the law. As contemplated by Del. Code Ann. tit. 10, § 57 judicial involvement on review of an award is quite limited. This is to foster use of the device and to prevent arbitration to degenerate into simply a preliminary step of a full-blown litigation. A court of chancery's responsibility is to promptly review the arbitral award to the limited extent permitted.  More Like This Headnote

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview
Contracts Law > Remedies > General Overview
HN3 Claims under the Delaware Wage Payment and Collection Act (WPCA) are ordinarily claims for money owed. The action at law for breach of contract gave a full and complete remedy for actions for wages and before the WPCA was enacted such claims were brought in the law courts. Thus in a typical case a court of chancery has no jurisdiction over such claims. Del. Code Ann. tit. 10, § 342. WPCA does not expand a court of chancery's jurisdiction. Thus it is not a court of competent jurisdiction, Del. Code Ann. tit. 10. § 1113(a) in which an action under WPCA standing alone, may be brought. The court of chancery however in the interests of judicial economy takes jurisdiction over the entirety of a dispute between parties who are validly before it.  More Like This Headnote

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview
Civil Procedure > Equity > General Overview
Civil Procedure > Remedies > Costs & Attorney Fees > Costs > General Overview
HN4 Delaware continues our divided system of law and equity. The division of jurisdiction does impose special costs. One such cost is the expense involved in deciding motions to dismiss because a defendant asserts that a plaintiff picked the wrong court. Another expense is incurred when a party is required to go to two courts to get all of the relief to which he or she was entitled under the facts alleged and proven. It is the responsibility of the judges, who grow familiar with the special costs and benefits of the system, to minimize all of these costs where possible.  More Like This Headnote

**COUNSEL:** John C. Andrade, Esquire, Parkowski, Noble & Guerke, P.A., 116 W. Water Street, P. O. Box 598, Dover, Delaware 19903-0598.

Patricia L. Bartley-Schwartz, Esquire, Heckler & Cattie, P.O. Box 128, Wilmington, Delaware 19899.

**JUDGES:** ALLEN

**OPINION BY:** WILLIAM T. ALLEN

**OPINION**

Plaintiff filed an application under Section 5713 of title 10 of the Delaware Code to confirm an arbitration award. HN1 Under Sections 5701 and 5702 of title 10 the Court of Chancery is granted jurisdiction to enforce arbitration agreements. There was in this instance no resistance to arbitration by either party and thus no occasion for the court to compel arbitration. The complaint seeks to confirm an award made to plaintiff by the arbitrator of $ 10,977.85.

In addition the complaint alleges that the amount that the arbitrator found to be due plaintiff constitutes "wages" under 19 Del. C. §§ 1103(b) and 1101(a)(2) ("commissions"). Thus, plaintiff seeks, in addition to the confirmation of the arbitration award, $ 10,977.85 statutory damages and the award of attorney's fees.

In its answer defendant asserted that the court lacks jurisdiction over the claim for damages and asserts a right to have the award **[*2]** modified or corrected for what it termed as a

"miscalculation."

A motion to modify the award was then filed by defendant and a response to that motion made. (See Dkt. # 8). Defendant has also filed a "motion to strike" directed towards the claims asserted to arise under title 19. This motion has now been briefed by the parties. For the reasons that follow I conclude that the court may properly, and in this instance should, exercise jurisdiction over the parties properly before it to determine all of their claims and defenses arising out of the facts that give rise to the dispute.

* * *

HN2 The arbitration procedure is a voluntary non-judicial dispute resolution mechanism that is favored by the law. As contemplated by Chapter 57 of title 10 judicial involvement on review of an award is quite limited. This is to foster use of the device and to prevent arbitration to degenerate into simply a preliminary step of a full-blown litigation. _Pettinaro Constr. Co. v. Harry Partridge & Sons,_ Del. Ch., 408 A.2d 957 (1979). The Court of Chancery's responsibility is to promptly review the arbitral award to the limited extent permitted _Roberts v. Shelly's of Delaware Inc.,_ **[*3]** 1982 Del. Ch. LEXIS 484, Del. Ch., C.A. 6801, V.C. Hartnett (Nov. 9, 1982).

Thus the issues presented upon a motion for confirmation are limited. Plaintiff seeks to add to them here by asserting additional issues: Does an unconfirmed arbitral award create an obligation for "wages" under the Delaware Wage Act when the claim arbitrated was plainly for "wages." Plaintiff is clear that the claim to wages she now asserts does arise from the award and did not precede it, for before that the matter was in dispute.

Defendant asserts that in an action to confirm an arbitral award, the court has no power to alter the award to include any claims under Wage Payment and Collection Act. To this plaintiff says that she is not attempting to modify that award, but to assert an additional claim that is premised upon the obligation created by the award ("Not only is Applicant not asking to alter the arbitration award, Applicant's cause of action did not even accrue until after the arbitration award came into being." Brief in Opposition at 5). I accept plaintiff's view as correct. The existence of a statutory claim, if one does exist here, does not affect the terms of the arbitral award.

HN3 Claims under the Wage Payment and Collection **[*4]** Act ("WPCA") are ordinarily and in this case, claims for money owed. The action at law for breach of contract provides a full and complete remedy for actions for wages and before the WPCA was enacted such claims were brought in the law courts. Thus in the typical case the Court of Chancery has had no jurisdiction over such claims (10 _Del. C._ § 342). WPCA did not expand this court's jurisdiction. Thus this court is not a court of competent jurisdiction (10 Del. C. § 1113(a)) in which an action under WPCA standing alone, may be brought.

The Court of Chancery however has in the interests of judicial economy long taken jurisdiction over the entirety of a dispute between parties who are validly before it. _Root v. York Corp.,_ 28 Del. Ch. 203, 39 A.2d 780 (1944); _Pomeroy's Equity Jurisprudence,_ §§ 181, 231-243 (5th ed. 1941).

* * *

HN4 Delaware continues our divided system of law and equity. We are almost alone in doing so, but we continue it because we find practical advantages in this historic system. But the division of jurisdiction does impose special costs. One such cost is the expense involved in deciding motions to dismiss because the defendant asserts **[*5]** that the plaintiff picked the wrong court. Another expense is incurred when a party is required to go to two courts to get all of the relief to which he or she was entitled under the facts alleged and proven. It is the responsibility of our judges, who grow familiar with the special costs and benefits of our system, to minimize all of these costs where possible. _In Re RJR Nabisco, Inc. Shareholders Litigation,_ Del. Ch., 576 A.2d 654 (1990). Only a wooden and superficial understanding of

our system could support the result and the added cost that defendant here seeks to impose upon plaintiff. In *RJR Nabisco, Inc. Shareholders Litigation,* for example, it was held that Chancery had subject matter jurisdiction over a claim sought to be brought as a counterclaim by an intervenor seeking adjudication of non-liability for negligence. Plainly the substantive claim was one for which a legal remedy existed. But the circumstances of the case were found to implicate the doctrine referred to in *Root v. York Corp., supra.* That sensible efficiency is applicable here as well where the questions raised by the WPCA action arise out of **[*6]** the same matter as does the arbitral award and appear to involve no substantial collateral factual disputes.

Therefore, the motion to strike will be denied.

* * *

With respect to the remaining motion, I have now reviewed the motion and Section 5711 of the Arbitration Act. I have no desire to review the substantive determinations made by the Arbitrator except as may be necessary to determine whether there is an "evident miscalculation. . . ." The arbitrator himself would not be bound by that high standard but could correct any mistake he made, whether evident or not, so long as upon honest consideration he concludes that he has made a miscalculation. The Arbitration Act sensibly provides a mechanism to have the arbitration review this question.

Therefore as defendant has sought a timely modification by the court under Section 5715(a) (1), and as I conclude that the arbitrator is in the best position to determine if a miscalculation was made, I will direct defendant to prepare and give a notice of the kind contemplated by Section 5711 and I will direct the parties thereafter to follow the procedure outlined in that section for the arbitrator to dispose in writing the issue so framed, **[*7]** as provided therein.

The plaintiff will then furnish the record with a copy of any modified arbitral order or other writing of the arbitrator concluding the arbitrator's consideration.

If the parties have not by then resolved all issues raised in the complaint plaintiff shall move for summary judgment promptly thereafter.

The pending motion to strike is denied.

William T. Allen, Chancellor

Service: **Get by LEXSEE®**
Citation: **1993 del ch. lexis 170**
View: Full
Date/Time: Tuesday, June 5, 2007 - 11:04 AM EDT



About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Service:  **Get by LEXSEE®**
Citation: **1997 Del. Ch. LEXIS 6**

*1997 Del. Ch. LEXIS 6, *; 3 Wage & Hour Cas. 2d (BNA) 1370*

AUGUSTUS ROBBINS, IV, Plaintiff, v. TREMONT MEDICAL, INC., ANDREW L. MITCHELL, JR. and MICHAEL L. HERSHEY, Defendants.

C.A. No. 15117

COURT OF CHANCERY OF DELAWARE, NEW CASTLE

1997 Del. Ch. LEXIS 6; 3 Wage & Hour Cas. 2d (BNA) 1370

October 6, 1996, Date Submitted
January 16, 1997, Date Decided

**NOTICE:**

**[*1]**  THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**DISPOSITION:** Plaintiff's complaint dismissed for lack of subject matter jurisdiction, unless within sixty days from this date the plaintiff files an election to transfer this case to the appropriate court pursuant 10 Del. C. § 1902.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff former employee filed an action alleging breach of employment contract and violation of Delaware's Wage and Payment Collection Act against defendants, company and officers, and defendant officers sought to dismiss the claim against them for failure to state a claim upon which relief could be granted.

**OVERVIEW:** After the former employee began to investigate information obtained by company auditor in his capacity as executive vice president of the company, the chairman of the board accused the employee of trying to make him look bad and demanded that he resign. When the employee refused to resign he received a letter stating that he was terminated for cause. The employee then filed an action alleging breach of employment contract and violation of Delaware's Wage Payment and Collection Act (Act). The company and its officers were sued individually for knowingly allowing the company to violate the Act and sought to dismiss the claim against them for failure to state a claim upon which relief could be granted. On review, the court held that the forum selection clause provided that actions should have been brought in those courts of Delaware of which both parties consented to have personal and subject matter jurisdiction. The court dismissed the employee's claim holding that it did not have jurisdiction, as the employee's claims for equitable relief were merely a disguised claim for damages and made requests that the court could not grant because the employee had an adequate remedy at law.

**OUTCOME:** The company and officers' motion to dismiss was granted.

**CORE TERMS:** stock, Collection Act, monetary relief, subject matter jurisdiction, relief requested, equitable relief, salary, employment contract, specific performance, common law, failure to state a claim, legal remedy, knowingly, election, breach of contract, severance pay, order requiring, equitable right, equitable jurisdiction, forum selection clause, termination, remedied, partly, hired, owed

### LexisNexis® Headnotes  ♦  Hide Headnotes

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview 

HN1 ± The Court of Chancery shall not have jurisdiction to decide a case where an adequate remedy is available by common law or statute before another court. The court is required to look to the substance of the relief requested by plaintiff to determine whether adequate relief may be obtained at law. More Like This Headnote

Civil Procedure > Remedies > General Overview

HN2 ± The Court of Chancery will award monetary relief when appropriate to remedy a violation of an equitable right. More Like This Headnote

**COUNSEL:** William W. Bowser, Esquire, of YOUNG, CONAWAY, STARGATT & TAYLOR, Wilmington, Delaware; OF COUNSEL: David R. Dearden, Esquire, of KALOGREDIS, TSOULES AND SWEENEY, LTD., Wayne, Pennsylvania, Attorneys for Plaintiff.

Daniel F. Wolcott, Jr., Esquire, of POTTER ANDERSON & CORROON, Wilmington, Delaware: OF COUNSEL: Joel W. Todd, Esquire, and Frank Schwartz, Esquire, of DOLCHIN, SLOTKIN & TODD, P.C., Philadelphia, Pennsylvania, Attorneys for Defendants Andrew L. Mitchell, Jr., and Michael L. Hershey.

**JUDGES:** William B. Chandler III, Vice Chancellor

**OPINION BY:** William B. Chandler III

**OPINION**

MEMORANDUM OPINION

CHANDLER, Vice Chancellor

Former employee alleges breach of employment contract and violation of Delaware's Wage Payment and Collection Act. Individual defendants, alleged to have knowingly allowed the corporation to violate the Act, seek to dismiss **[*2]** the claim against them for failure to state a claim upon which relief may be granted. Because I find this Court lacks subject matter jurisdiction, plaintiff's claim against the individual defendants as well as plaintiff's claims against the corporation are dismissed pursuant to 10 *Del. C.* § 1902.

I. BACKGROUND

On October 31, 1995, plaintiff Augustus Robbins, IV, was hired as the Executive Vice President of defendant company, Tremont Medical, Inc. ("Tremont"). His Employment Agreement provided several different ways to acquire Tremont stock including purchase options, automatic monthly grants, and awards of shares in lieu of salary. In addition, Robbins and Tremont executed a Subscription Agreement whereby Robbins was entitled to receive shares as commission for arranging the purchase of additional shares. Robbins also claims he was orally offered shares in exchange for guaranteeing Tremont's line of credit.

In April or May 1996, information obtained by auditors hired by Robbins raised questions about payments to and charges by defendant Andrew Mitchell, a Tremont officer and Chairman of the Board. Failing to obtain what he believed to be sufficient cooperation in response to **[*3]** requests for information concerning the questions raised, Robbins confronted Mitchell to ask for his assistance. According to the complaint, Mitchell accused Robbins of trying to make Mitchell look bad and told Robbins that he would be fired if he did not provide a letter of resignation within one hour. Robbins did not resign. On May 28, 1996, Robbins received a letter stating that he was terminated for cause.

In Count I of the complaint, Robbins alleges that Tremont wrongfully breached the Employment Agreement by terminating him "for cause." He claims damages of $ 518,120.45, consisting of lost severance pay, stock options, stock grants, and salary, not including

additional compensatory damages, interest and costs. In Count II, Robbins claims that Tremont, Mitchell, and Michael L. Hershey [1] are responsible for failing to provide his severance pay, stock grants and options, and that because such failure constitutes a violation of the Delaware Wage Payment and Collection Act, [2] he is entitled to liquidated damages not to exceed one hundred percent of the outstanding wages. The relief requested in Count III, an order requiring Tremont to issue to Robbins 391,244 shares, is partly **[*4]** an alternative to a portion of the damages requested in Count I, and partly an alternative to damages requested in Count II.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

[1] Hershey is an employee of Tremont.

[2] 19 *Del. C.* §§ 1101-1115.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Defendants Mitchell and Hershey seek to dismiss Count II of Robbins' complaint for failure to state a claim upon which relief may be granted. [3] Count II, the only count that specifically names Mitchell and Hershey as defendants, alleges that they "knowingly permitted the corporation to violate the Wage Payment and Collection Act, in connection with the termination of plaintiff." [4]

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

[3] Tremont did not join in the individual defendants' motion.

[4] Compl. PP 35, 39.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## II. CONTENTIONS OF THE PARTIES

Defendants characterize the issue involved as a matter of first impression which requires me to decide "whether the enforcement and liability **[*5]** provisions of [Delaware's Wage Payment and Collection] Act control a termination in Pennsylvania when the company no longer has employees or operations in Delaware and the employee does not then work in the State of Delaware." [5] Defendants argue that it does not control and plaintiff, in response, "accept[s] defendants' contentions that Delaware law does not apply" but maintains that he has stated a claim upon which relief may be granted under Pennsylvania's applicable Wage Payment and Control Law. [6] He, therefore, argues that "if this Court finds that plaintiff has described the wrong statute, but he has pleaded facts which state a claim under the correct law, the claim asserted must not be dismissed." [7] Robbins' claim must be dismissed, however, if this Court lacks subject matter jurisdiction.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

[5] Opening Br. at 5.

[6] 43 P.S. § 260 *et seq.*

[7] Answering Br. at 6.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

When considering defendants' motion to dismiss, I must accept all facts alleged in the complaint as true and construe all **[*6]** inferences in favor of Robbins. [8] Robbins' complaint alleges violation of the Delaware Wage Payment and Collection Act, although he claims that the facts and allegations of the complaint may be fairly read to assert a claim under

Pennsylvania's Wage Payment and Control Law. Even if I could infer that Robbins has asserted a claim based on Pennsylvania, rather than Delaware, law, such a claim would be in addition to, not in place of, a claim under Delaware law ⁹ and either claim would still be subject to the analysis which follows.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

**8** _In re Tri-Star Pictures, Inc., Litig.,_ Del. Supr., 634 A.2d 319, 326 (1993).

**9** The Employment Agreement clearly provides that all questions pertaining to the "validity, interpretation, performance and enforcement (including without limitation, provisions concerning limitations of actions) [of the Employment Agreement], shall be governed by and construed in accordance with the laws of the State of Delaware." Employment Agreement P 21.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

III. ANALYSIS

Our law expressly **[*7]** provides that _HN1_ the Court of Chancery shall not have jurisdiction to decide a case where an adequate remedy is available by common law or statute before another court. ¹⁰ This Court is thus required to look to the substance of the relief requested by plaintiff to determine whether adequate relief may be obtained at law. It frequently has been said that this Court, in determining jurisdiction, will go behind the "facade of prayers" to determine the "true reason" for which the plaintiff has brought suit. ¹¹ By this it is meant that a judge in equity will take a practical view of the complaint, and will not permit a suit to be brought in Chancery where a complete legal remedy otherwise exists but where the plaintiff has prayed for some type of traditional equitable relief as a kind of formulaic "open sesame" to the Court of Chancery.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

**10** 10 _Del. C._ § 342 ("The Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State.").

**11** _Hughes Tool Co. v. Fawcett Publications, Inc.,_ Del Ch., 297 A.2d 428 (1972). _See also Strickler v. Sussex Life Care Assocs.,_ Del. Super., 541 A.2d 587 (1987); _Harman_ v. _Masoneilan Int'l., Inc.,_ Del. Ch., 418 A.2d 1004 (1980), _rev'd on other grounds,_ Del. Supr., 442 A.2d 487 (1982).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

**[*8]** There are two ways in which the complaint may be read to assert a basis for equitable jurisdiction. The first, Robbins' assertion that "venue is appropriate in the Court of Chancery . . . pursuant to the forum selection clause contained in the Employment Contract upon which suit is based," ¹² lacks merit. The forum selection clause provides that actions shall be brought in those courts of Delaware in which both Robbins and Tremont consent to have personal and subject matter jurisdiction. ¹³ It is clear, however, that parties may not confer jurisdiction on the Court of Chancery through private contract. ¹⁴

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

**12** Compl. P 6.

**13** Employment Agreement P 22.

**14** _El Paso Natural Gas Co. v. Transamerican Natural Gas Corp.,_ Del. Supr., 669 A.2d 36, 39 (1995) (citing _Timmons v. Cropper,_ Del. Ch., 40 Del. Ch. 29, 172 A.2d 757, 760 (1961) and

*Elia Corp. v. Paul N. Howard Co.,* Del. Super., 391 A.2d 214, 215-16 (1978)).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

The second basis for jurisdiction, Robbins' claim that Chancery "has jurisdiction **[*9]** over this case because [he] is asking for equitable relief in addition to his claims for relief at law," **15** also fails. The only Count requesting equitable relief, Count III, requests an order requiring Tremont to issue to Robbins 391,244 shares. This request, however, is merely a disguised claim for damages. There is no reason why the harm alleged in Count III may not be adequately remedied by the award of damages. Robbins, in fact, requests an award of 300,000 of the total shares only if Tremont agrees to convert this order into monetary relief by agreeing to repurchase the shares at $ 2.50 per share. An additional 20,830 shares of the total is sought for the wrongful breach of his employment contract but only in the alternative to the strictly monetary relief requested in Count I. A further award of 18,750 shares is sought to replace the shares Robbins was promised in lieu of his salary in October 1995, November 1995, and January 1996. Robbins alleges that his right to receive these shares in lieu of salary is set forth in the Employment Agreement and, thus, this claim is based on breach of contract. Finally, Robbins requests 5,000 shares he claims he is owed under an oral **[*10]** agreement and 35,000 shares he claims he is owed as commission pursuant to a Subscription Agreement. Each portion of the relief requested in Count III is either conditioned on Tremont converting the requested order into a monetary award or is requested as equitable relief for breaches of oral and written contracts. The relief requested in Count III is, therefore, available at law. The request for an order for the bulk of the shares is an expressly admitted claim for damages and the request for an order for the remaining shares is a compilation of requests for specific performance of various oral and written contracts involving the transfer of stock, requests which this Court may not grant if plaintiff has an adequate remedy at law. **16**

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

**15** Compl. P 5.

**16** *See Francis v. Medill,* Del. Ch., 16 Del. Ch. 129, 141 A. 697, 698 (1928); *Lineberger v. Welsh,* Del. Ch., 290 A.2d 847, 848 (1972) ("where the stock is purchasable in the market, or its value otherwise ascertainable, specific performance is not available, the legal remedy of damages being adequate"). Robbins has not alleged factors that might justify an award of specific performance. Such factors include assertions that the stock's value may not be easily ascertained or that the amount of stock at issue would provide him with majority control. *See, e.g., Hazen v. Miller,* Del. Ch., C.A. No. 1292, Jacobs, V.C. (Nov. 18, 1991).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - -

**[*11]** Count I seeks damages for breach of contract. Count II alleges violation of the Delaware Wage Payment and Collection Act and seeks monetary relief which is available to plaintiff at law. **17** Count III is an alternative to the damages sought in Counts I and II. Each of Robbins' claims, therefore, if proven, may be remedied by an award of monetary relief. This fact by itself, however, does not automatically lead to the conclusion that this Court lacks jurisdiction solely because monetary relief is available at law. **18** *HN2* The Court of Chancery will award monetary relief when appropriate to remedy a violation of an equitable right. But Robbins' claims are not based on equitable rights. I find no basis for equitable jurisdiction with respect to any of Robbins' claims.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

**17** *See 19 Del. C.* § 1113.

**18** *Bird v. Lida, Inc.,* Del. Ch., C.A. No. 14486, Allen, C. (April 5, 1996), at 5.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - -

Defendants seek to dismiss only Count II. Whenever this Court determines that it does not have subject matter jurisdiction over **[*12]** a claim, however, it must be dismissed. [19] Accordingly, all three counts will be dismissed, unless plaintiff, within sixty days from the date of this decision, files a written election to transfer the action to the appropriate Court in accordance with 10 *Del. C.* § 1902.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

[19] Ct. Ch. R. 12(h)(3).

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

An Order has been entered in accordance with this Memorandum Opinion.

ORDER

For the reasons assigned in this Court's Memorandum Opinion entered in this case on this date, it is

ORDERED that the plaintiff's complaint in this action is dismissed for lack of subject matter jurisdiction, unless within sixty days from this date the plaintiff files an election to transfer this case to the appropriate court pursuant to 10 *Del. C.* § 1902.

William B. Chandler III

Vice Chancellor

Dated: January 16, 1997

Service: **Get by LEXSEE®**
Citation: **1997 Del. Ch. LEXIS 6**
View: **Full**
Date/Time: Tuesday, June 5, 2007 - 11:04 AM EDT

* Signal Legend:
🔴 - Warning: Negative treatment is indicated
🟦Q - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
✦ - Positive treatment is indicated
🅐 - Citing Refs. With Analysis Available
🅘 - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

 LexisNexis®    About LexisNexis  |  Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Get a Document - by Citation - 2000 U.S. Dist. LEXIS 6053                    Page 1 of 6

Case 1:07-cv-00262-GMS   Document 3-2   Filed 06/05/2007   Page 20 of 30

Service: **Get by LEXSEE®**
Citation: **2000 us dist lexis 6053**

*2000 U.S. Dist. LEXIS 6053, \*; 140 Lab. Cas. (CCH) P34,062*

MILTON FOSTER, ERIC L. PRESSLEY, MARYANN SOLOMON and BARBARA GRANT-WALKER, Plaintiffs, -against- THE FOOD EMPORIUM, THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., et al., Defendants.

99 Civ. 3860 (CM)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2000 U.S. Dist. LEXIS 6053; 140 Lab. Cas. (CCH) P34,062

April 26, 2000, Decided

**DISPOSITION:** [*1] Plaintiffs' Motions to Amend Complaint and to Notify Potential Members of FLSA § 216(b) Class GRANTED.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiffs sought to amend their complaint to add state law claims pursuant to N.Y. Lab. Law § 190 and sought permission to notify other of defendants' employees of the pendency of their action, so that those employees could opt in as plaintiffs if they so wished.

**OVERVIEW:** Plaintiffs brought an action under the Fair Labor Standards Act (FLSA), 28 U.S.C.S. § 201 et seq., contending that they had been denied compensation for hours worked and for overtime work, as guaranteed by FLSA. A collective action under 29 U.S.C.S. § 216(b) was certified. Plaintiffs and the potential members of the action, other employees of defendants, were similarly situated and there was a factual nexus between the named plaintiffs and the situation of the other employees. Plaintiffs and proposed class members all were hourly employees of the defendants. All were alleged to have been subjected to the same illegal work conditions. All were alleged not to have been paid for hours worked or overtime, and to have been forced to work during lunch and break periods. Amendment of the pleading was allowed as a refusal to permit amendment would simply spawn duplicate litigation, but limited to the named plaintiffs. There was no collective action analogous to 28 U.S.C.S. § 261(b) under the wage and overtime provisions of the state labor law.

**OUTCOME:** Motion to amend complaint granted as to named plaintiffs only; there was no collective action under the state wage and overtime provisions. Motion to notify potential members of Fair Labor Standards Act class granted; plaintiffs and potential class members were similarly situated and plaintiffs identified practices which were common to all of defendants' stores.

**CORE TERMS:** notice, collective action, overtime, similarly situated, authorize, Labor Law, statute of limitations, opt-in, New York State Labor Law, opt, amend, hourly, lunch, Fair Labor Standards Act, action to recover, metropolitan area, class action, hours worked, law claim, permission, putative, certify, certification, elect

### LexisNexis(R) Headnotes ◆ Hide Headnotes

Civil Procedure > Class Actions > General Overview 🔍
  Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview 🔍
*HN1* ⬇ See 29 U.S.C.S. § 216(b).

Civil Procedure > Class Actions > General Overview 🔍
  Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview 🔍

**HN2** ⬇ The Second Circuit holds that a district court has the power to order that notice be given to other potential members of a plaintiff class under the "opt in" provisions of the Fair Labor Standards Act, 28 U.S.C.S. § 201 et seq. More Like This Headnote |
*Shepardize:* Restrict By Headnote

  Civil Procedure > Class Actions > Prerequisites > Commonality 🔍
  Civil Procedure > Class Actions > Prerequisites > Numerosity 🔍
  Civil Procedure > Class Actions > Prerequisites > Typicality 🔍

**HN3** ⬇ The strict requirements of Fed. R. Civ. P. 23 do not apply to "collective actions" under the Fair Labor Standards Act, 28 U.S.C.S. § 201 et seq., and thus no showing of numerosity, typicality, commonality and representativeness need be made. Rather, plaintiff must meet only one threshold requirement: whether the other members of the proposed collective action are "similarly situated." The court must determine if there is a factual nexus between the named plaintiff's situation and the situation of the other current and former employees. More Like This Headnote |
*Shepardize:* Restrict By Headnote

  Civil Procedure > Class Actions > General Overview 🔍
  Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions 🔍

**HN4** ⬇ A court need not evaluate the merits of the case or wait for the completion of discovery in order to certify a collective action under the Fair Labor Standards Act, 28 U.S.C.S. § 201 et seq. Plaintiffs can meet the burden of demonstrating that they are similarly situated by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law. More Like This Headnote | *Shepardize:* Restrict By Headnote

  Civil Procedure > Class Actions > General Overview 🔍
  Governments > Legislation > Statutes of Limitations > Time Limitations 🔍
  Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview 🔍

**HN5** ⬇ Only by "opting in" will the statute of limitations on potential plaintiffs' claims be tolled under the Fair Labor Standards Act, 28 U.S.C.S. § 201 et seq. More Like This Headnote | *Shepardize:* Restrict By Headnote

  Civil Procedure > Class Actions > Notices 🔍
  Civil Procedure > Remedies > Damages > Punitive Damages 🔍
  Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions 🔍

**HN6** ⬇ It is well settled that there is no collective action analogous to that under § 261(b) of the Fair Labor Standards Act, 28 U.S.C.S. § 201 et seq., under the wage and overtime provisions of the New York State Labor Law. N.Y. Lab. Law § 198(1). Further, N.Y. C.P.L.R. 901(b) provides that a plaintiff may not seek class-wide relief that includes statutorily prescribed liquidated or punitive damages unless the statute in questions explicitly authorizes its enforcement by class actions. More Like This Headnote | *Shepardize:* Restrict By Headnote

  Estate, Gift & Trust Law > Wills > Beneficiaries > Elections 🔍
  Governments > Legislation > Statutes of Limitations > Time Limitations 🔍

**HN7** ⬇ Six years is the statute of limitations under the New York Labor Law. N.Y. Lab. Law § 663(3). More Like This Headnote | *Shepardize:* Restrict By Headnote

  Civil Procedure > Jurisdiction > Diversity Jurisdiction > Amount in Controversy > Determinations 🔍
  Civil Procedure > Class Actions > General Overview 🔍

**HN8** ⬇ It would be improper to bring persons who have no federal claim into the court under the guise of a collective action so they can pursue state law claims that they can only bring on their own and not collectively. More Like This Headnote

Civil Procedure > Class Actions > Prerequisites > General Overview 🔍
*HN9* ↓ See N.Y. C.P.L.R. 901(b).

> Civil Procedure > Class Actions > General Overview 🔍
> Governments > Legislation > Statutory Remedies & Rights 🔍
*HN10* ↓ Federal and state courts in New York have routinely denied class certification to plaintiffs pursuing statutory claims for unpaid wages on the ground that N.Y. C.P.L.R. 901(b) prohibits it. Attempts by plaintiffs to get around the rule by waving the liquidated damages remedy have been rejected by courts as undermining putative lead plaintiffs' ability to represent others who have a statutory right to the remedy. More Like This Headnote

**COUNSEL:** For Plaintiffs: Carolyn Minter, Esq., Ossining, N.Y.

For Defendants: Douglas Catalano, Esq., Fullbright & Jaworski, L.L.P., New York, N.Y.

**JUDGES:** Colleen McMahon, U.S.D.J.

**OPINION BY:** Colleen McMahon

**OPINION:** MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTIONS TO AMEND THE COMPLAINT AND TO NOTIFY POTENTIAL MEMBERS OF A FLSA § 216(b) CLASS

McMahon, J.:

This is an action brought pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA"), 28 U.S.C. § 201 et seq., as a putative collective action by employees of Defendants, well-known grocers in the New York metropolitan area. Plaintiffs contend that they have been denied compensation for hours worked and for overtime work, as guaranteed by FLSA. By these motions, they (1) seek to amend the complaint to add State law claims brought pursuant to Section 190 of the New York State Labor Law (minimum wage and overtime provisions), and (2) ask permission to notify other A&P and Food Emporium employees at some 82 stores in this District of the pendency of this action, so that those employees can opt **[*2]** in as plaintiffs if they so wish. Defendants oppose both motions.

The motion for collective action certification and for permission to send notice to potential class members is granted. The motion to amend claims under the New York State Labor law is granted, but only as to the named plaintiffs.

DISCUSSION

A. Motion for "Opt-in" Notice under FLSA

Plaintiff moves for certification of a "collective action" under the Fair Labor Standards Act, 29 U.S.C. § 216(b), and to certify the sending of opt-in notice to all the proposed members of the collective action.

*HN1* ↓ Section 216(b) of the FLSA provides in pertinent part:

> An action to recover . . . liability . . . may be maintained against any employer . . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 34,062

Case 1:06-cv-00262-GMS    Document 3-2    Filed 06/05/2007    Page 23 of 36    Page 4 of 6

29 U.S.C. § 216(b).

Defendant cites a number of older cases from other Circuits for the proposition that notice ought not [*3] be given in cases like this one, because it stirs up litigation. However, HN2 the Second Circuit has held that a district court has the power to order that notice be given to other potential members of a plaintiff class under the "opt in" provisions of the FLSA. See Braunstein v. Eastern Photographic Labs, Inc., 600 F.2d 335 (2d Cir. 1978). HN3 The strict requirements of Rule 23 of the Fed. R. Civ. P. do not apply to FLSA "collective actions," and thus no showing of numerosity, typicality, commonality and representativeness need be made. Rather, Plaintiff must meet only one threshold requirement: Whether the other members of the proposed collective action are "similarly situated." See Hoffman v. Sbarro, Inc., 982 F. Supp. 249 (S.D.N.Y. 1997). The Court must determine if there is a "factual nexus between the [named plaintiff's] situation and the situation of the other current and former [employees]." Id. at 262.

In Hoffman, Judge Sotomayor noted that HN4 a Court need not evaluate the merits of the case or wait for the completion of discovery in order to certify a collective action. Plaintiffs can meet the burden of demonstrating that they [*4] are similarly situated by "making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Hoffman 982 F. Supp. at 261 (citing Krueger v. New York Telephone Co., 1993 U.S. Dist. LEXIS 9988, 1993 WL 276058)).

I find that Plaintiffs have met their burden. The four named Plaintiffs have worked at stores owned by defendants in Harrison, White Plains, Bedford and Eastchester, New York. They are (or were) hourly employees. They have identified certain practices that they allege are common to all 82 Food Emporium and A&P stores in the New York metropolitan area (New York City, Westchester, Rockland, Dutchess and Putnam counties) -- namely, requiring employees to work through their lunch breaks without being paid; working through the day without breaks; punching out on times cards yet continuing to work after the time card showed that they had left for the day; working on Sunday without being paid double time. At least some of these practices were allegedly the result of a computer override that was instituted at the A&P/Food Emporium chains.

Plaintiffs and the proposed class members [*5] -- consisting of all current A&P and Food Emporium employees who are paid by the hour, and all former employees for up to three years prior to the date that each individual affirmatively elect to opt into this collective action n1 -- are similarly situated. All are hourly employees of the defendants. All are alleged to have been subjected to the same illegal work conditions. n2 All are alleged not to have been paid for hours worked, to have been paid overtime, and to have been forced to work during lunch and break periods. (See Foster Aff.; Pressley Aff.; Grant-Walker Aff; Solomon Aff.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 HN5 "Only by 'opting in' will the statute of limitations on potential plaintiffs' claims be tolled." Hoffman 982 F. Supp. at 260 (citing Soler v. G & U, Inc., 86 F.R.D. 524, 528-29 (S.D.N.Y. 1980)). Because of the statute of limitations, potential plaintiffs may be eliminated as each day goes by. For this reason, it is advisable that notice be given as soon as practicable.

n2 I note that Maryann Solomon is in a unique situation. She avers that she was "usually paid for lunch hours and overtime work during the majority [of time she was employed by A&P]". (Solomon Aff. P 4.) She thus may not state an identical claim to the other named plaintiffs. Identity of claims, however, is not required.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*6]

I conclude that Plaintiffs are similarly situated with a collective class that consists of those current and former hourly employees of A&P and The Food Emporium in New York City, Westchester County, Rockland County, Putnam County and Dutchess County who are or were so employed during the past three years, and order that notice to "opt-in" be given to the potential class members. In so holding, I make no findings on the merits of Plaintiffs' claims. Nor do I make any finding concerning whether A&P's violation, assuming one were found, would be "wilful" so as to trigger a three year (as opposed to a two year) statute of limitations.

Plaintiffs' motion is deficient in that it fails to suggest how notice shall be given to the employees. Counsel should meet and confer and provide the Court with a suggested procedure for giving notice.

B. Motion to Amend the Complaint

Plaintiffs also move for leave to amend the Complaint to include a claim for overtime wages under the New York State Labor Law. N.Y. Labor Law § 190 (McKinney's 1997).

I note first that this represents Plaintiffs' third proposed amended complaint. This Court frowns upon such sloppy pleading. However, given the **[\*7]** liberal sentiment of Fed.R.Civ.P. 15 and the fact that refusal to permit amendment will simply spawn duplicate litigation in the New York State Supreme Court, I will permit the four named plaintiffs to amend their individual claims to assert a cause of action under the Labor Law. I do not, however, authorize any amendment on behalf of any "class." Nor do I authorize the giving of any notice about the Labor Law claim to those individuals who may have viable Federal claims, or giving any notice at all to persons who were employed by A&P more than three years from whatever "Notice Date" is chosen by the parties or imposed by the Court.

*HN6* It is well settled that there is no collective action analogous to FLSA § 261(b) under the wage and overtime provisions of the New York State Labor Law. See N.Y. Lab. Law § 198(1); Carter v. Frito-Lay, Inc., 74 A.D.2d 550, 425 N.Y.S.2d 115, affd., 52 N.Y.2d 994, 438 N.Y.S.2d 80, 419 N.E.2d 1079 (1981). Further, the New York Civil Practice Law and Rules § 901(b) provides that a plaintiff may not seek class-wide relief that includes statutorily prescribed liquidated or punitive damages unless the statute in questions **[\*8]** explicitly authorizes its enforcement by class actions. n3 There is therefore no basis for this Court to authorize notice to potential class members going back *HN7* six years (which is the statute of limitations under the Labor Law). See N.Y. Lab. Law § 663(3)(McKinney 1997). No doubt persons who elect to opt-in with their Federal claims will be advised by counsel for the plaintiff collective that they are also free to assert claims under the State's Labor Law; indeed, plaintiffs' counsel would be derelict in her duty if she did not so advise them. If persons who have no Federal claim but a timely State law claim hear about this action from their friends and co-workers and wish to file their own individual Labor Law complaints in the New York State Supreme Court, they are free to do so. Those individuals would not be properly before this Court, however, because they have no federal claim and there would not be diversity jurisdiction over any State law claim they might assert (because the $ 75,000 jurisdictional amount would not be reached). *HN8* It would be improper to bring persons who have no Federal claim into this Court under the guise of a collective action so they can pursue State **[\*9]** law claims that they can only bring on their own and not collectively.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 *HN9* CPLR 901(b) states:

> Unless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by

statute may not be maintained as a class action.

N.Y. CPLR § 901(b) (McKinney 1997).

**HN10**

Federal and state courts in New York have routinely denied class certification to plaintiffs pursuing statutory claims for unpaid wages on the ground that CPLR 901(b) prohibits it. See, e.g., Dornberger v. Metropolitan Life Ins. Co., 182 F.R.D. 72 (S.D.N.Y. 1998); Caruso v. Allnet Commun. Servs., 242 A.D.2d 484, 662 N.Y.S.2d 468 (1st Dep't 1997). Attempts by plaintiffs to get around CPLR 901(b) by waving the liquidated damages remedy have been rejected by courts as undermining putative lead plaintiffs' ability to represent others who have a statutory right to the remedy. See, e.g., Woods v. Champion Courier, Inc., October 9, 1998 N.Y.L.J. 25 (col. 1 (Sup.Ct.N.Y.Cnty 1998)(citing Bradford v. Olympic Courier Systems, Inc., Sup.Ct, Kings County, March 26, 1997).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*10]**

This constitutes the decision and order of the Court.

Dated: April 26, 2000

Colleen McMahon

U.S.D.J.

Service: **Get by LEXSEE®**
Citation: **2000 us dist lexis 6053**
View: Full
Date/Time: Tuesday, June 5, 2007 - 11:05 AM EDT

* Signal Legend:
⬤ - Warning: Negative treatment is indicated
Ⓠ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◈ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

⬤ LexisNexis®  About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Get a Document - by Citation - 1990 U.S. Dist. LEXIS 8892    Page 1 of 6

Case 1:07-cv-00282-GMS    Document 5-2    Filed 06/05/2007    Page 26 of 30

Service: Get by LEXSEE®
Citation: 1990 us dist lexis 8892

*1990 U.S. Dist. LEXIS 8892, \**

WILLIAM ISAAC, WILLIE BRUNSON CLARENCE DENT, JR., CHARLES GARRETT, EVERETT P. JOHNSON and FRED SCOTT v. WM. H. PFLAUMER & SONS, INC., J.D. PFLAUMER, INC., WILLIAM H. PFLAUMER, SR., WILLIAM H. PFLAUMER, JR., ROBERT PFLAUMER and RONALD PFLAUMER

Civil Action No. 90-1622

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

1990 U.S. Dist. LEXIS 8892

July 16, 1990, Decided
July 17, 1990, Filed

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiffs, former employees, brought a putative class action in state court for payment of overtime wages under contract law, the Pennsylvania Wage Payment and Collection Law (WPCL), 43 P.S. § 260 et seq., and the Federal Fair Labor Standards Act (FLSA), 29 U.S.C.S § 201 et seq. Defendant employers removed the action on federal question jurisdiction under the FLSA and filed a partial motion to dismiss. The employees filed a motion to remand.

**OVERVIEW:** The court granted in part, and denied in part, the employees' motion to remand. The court held that as the FLSA claims were expressly asserted in the complaint, removal was permissible under the well-pleaded complaint rule. The court exercised its discretion under 28 U.S.C.S. § 1441(c) to sever and remand the WPCL claims of unnamed class members as matters not otherwise within its original jurisdiction. The court interpreted 28 U.S.C.S. § 1441(a) in accordance with the majority view that allowed removal of FLSA cases. The court granted the employers' motion to dismiss certain claims as time-barred. The court held that any general contract claims for overtime payments under the collective bargaining agreement were preempted by § 301 of the Labor Management Relations Act (LMRA). Accordingly, the LMRA's six-month statute of limitations applied to bar the employees' claims. The claims of three employees were time-barred under both the FLSA and the WPCL pursuant to the respective statutes of limitation.

**OUTCOME:** The court granted the employees' motion to remand WPCL claims asserted on behalf of unnamed putative class members, but denied the motion as to the remaining class members. The court granted the employers' partial motion to dismiss all contract theory claims, all payments that were time-barred, and certain time-barred claims as to three employees.

**CORE TERMS:** removal, partial, general contract, claims asserted, pendent, motion to dismiss, time-barred, preempted, federal question, written consent, state law, unnamed, collective bargaining agreement, original jurisdiction, removable, competent jurisdiction, interstate commerce, causes of action, civil action, federal law, et seq, nonconsenting, well-pleaded, overtime, putative, wage, statute of limitations, cause of action, lawsuit

## LexisNexis(R) Headnotes ◆ Hide Headnotes

Civil Procedure > Removal > Basis > General Overview
Civil Procedure > Removal > Proceedings > General Overview

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 8892    Page 2 of 6

Case 2:07-cv-00262-GMS    Document 5-2    Filed 06/05/2007    Page 27 of 30

**HN1** Removal jurisdiction is based on the face of a well-pleaded complaint. More Like This Headnote

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview
Civil Procedure > Class Actions > Prerequisites > General Overview
Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview

**HN2** The Fair Labor Standards Act requires written consent of each plaintiff. 29 U.S.C.S. § 215(b). More Like This Headnote

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview
Civil Procedure > Removal > Basis > Federal Questions
Civil Procedure > Removal > Postremoval Remands > Jurisdictional Defects

**HN3** 28 U.S.C.S. § 1441(c) provides: Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction. More Like This Headnote

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview
Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview

**HN4** The Fair Labor Standards Act (FLSA) provides that FLSA actions may be maintained in any federal or state court of competent jurisdiction. 28 U.S.C.S. § 216 (b). More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview
Civil Procedure > Removal > Basis > General Overview
Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview

**HN5** Under 28 U.S.C.S. § 1441(a), except as otherwise expressly provided by an Act of Congress, any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed. More Like This Headnote

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview
Civil Procedure > Removal > Basis > General Overview
Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview

**HN6** The Fair Labor Standards Act's provision under 28 U.S.C.S. § 216(b) that actions under it may be maintained in any state court is not an express exception to 28 U.S.C.S. § 1441(a). More Like This Headnote | *Shepardize:* Restrict By Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Federal Preemption

**HN7** Any state law cause of action for violation of collective-bargaining agreements is entirely displaced by federal law under § 301 of the Labor Management Relations Act. More Like This Headnote

Governments > Legislation > Statutes of Limitations > Time Limitations
Labor & Employment Law > Collective Bargaining & Labor Relations > Enforcement

**HN8** The statute of limitations under § 301 of the Labor Management Relations Act is six months. More Like This Headnote

**COUNSEL:** [*1]

Stephen G. Fox, Esq., Stephen G. Fox & Associates, P.C., Philadelphia, Pennsylvania.

Laura M. Stein, Esq., Alfred J. D'Angelo, Jr, Esq., Pepper, Hamilton & Sheetz, Philadelphia, Pennsylvania.

**JUDGES:** Norma L. Shapiro, United States District Judge.

**OPINION BY:** SHAPIRO

**OPINION:** Pending before the court are plaintiffs' motion to remand and defendants' partial motion to dismiss. For the following reasons, the motion to remand will be denied except as noted below and the partial motion to dismiss will be granted.

I. Plaintiffs' motion to remand

Plaintiffs, former employees of defendants Wm. H. Pflaumer & sons, Inc. and J.D. Pflaumer, Inc., brought this putative class action in state court alleging that they are owed wages for overtime hours. n1 The complaint asserts causes of action under "a general contract theory," the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. §§ 260 et seq., and the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. Defendants removed to this court based on federal question jurisdiction under the FLSA.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 Plaintiffs allege that the remaining defendants were "officers and/or directors and/or shareholders of corporate defendants." Complaint, para. 4.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*2]**

Plaintiffs make three arguments in favor of remand. They first argue that because defendants engage in intrastate, not interstate commerce, the FLSA claim cannot be the basis for removal. [HN1]Removal jurisdiction is based on the face of a well-pleaded complaint. See, e.g., Caterpillar, Inc. v. William, 482 U.S. 386 (1987). The complaint unambiguously alleges a claim under the FLSA. See Complaint, para. 15. This claim is therefore an adequate basis for removal.

Plaintiffs assert that if we do not remand, they will be unfairly exposed "to the possibility that if they obtain a favorable federal judgment, it may later be held that there was no jurisdiction." Memorandum of Law, at 1. However, if after trial, the FLSA claims cannot be sustained for lack of interstate commerce, the court can exercise pendent jurisdiction over the state law claims. See United Mine Workers v. Gibbs, 383 U.S. 715, 725-26 (1966).

The case cited by plaintiffs, Eierman v. Consolidated Rail, 637 F.Supp. 225, 226 (E.D.Pa. 1984), is inapposite. Defendants in Eierman removed based on a federal statute not pleaded in the complaint; defendant argued that it was the only cognizable basis for plaintiffs' **[*3]** claims. In this case, the FLSA claims are expressly asserted in the complaint. Under the well-pleaded complaint rule, removal is permissible. n2

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n2 Of course, plaintiffs, as masters of their lawsuit, may voluntarily dismiss the FLSA claims and then request that the remaining claims be remanded to state court.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Plaintiffs next argue that because written consent of potential class members is required under the FLSA but not under the WPCL, this court lacks federal question jurisdiction over class members who have not given written consent. Plaintiffs are correct that the [HN2]FLSA requires written consent of each plaintiff. See 29 U.S.C. § 215(b). However, even if this court lacks jurisdiction over unnamed putative class members, defendants have a right to remove

Get a Document - by Citation - 1990 U.S. Dist. LEXIS 8892    Page 4 of 6

Case 1:07-cv-00262-GMS    Document 5-2    Filed 06/05/2007    Page 29 of 30

the claims of plaintiffs over whom the court does have jurisdiction.

The WPCL claims of the nonconsenting class members might arguably remain in federal court under *HN3* 28 U.S.C. § 1441(c):

Whenever a separate and independent claim or cause of action, which would **[*4]** be removable is sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

However, there is some dispute over whether § 1441(c) applies to cases removed under federal question jurisdiction rather than diversity. Compare Thomas v. Shelton, 740 F.2d 478, 483 (7th Cir. 1984) with Rodriguez v. Comas, 888 F.2d 899, 904 & n.22 (1st Cir. 1989). Moreover, this case is not an appropriate one in which to exercise our discretionary power to hear otherwise nonremovable claims. No class action has yet been certified. The court has no information about the size of the class, the adequacy of the named plaintiffs as class representatives or the typicality of their claims. The viability of the "separate and independent claims" is currently unclear. We will exercise our discretion under § 1441(c) to sever and remand the WPCL claims of unnamed class members as matters not otherwise within our original jurisdiction. See Pirrone v. North Hotel Ass'n, 108 F.R.D. 78, 83-84 (E.D.Pa. **[*5]** 1985) (inappropriate to exercise pendent party jurisdiction over WPCL claims of plaintiffs who do not assert FLSA claims). n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 Pendent party jurisdiction is arguably an alternative basis for keeping before this court the WPCL claims of nonconsenting class members. Although some courts have recognized pendent party jurisdiction, see, e.g., Rodriguez v. Comas, 888 F.2d 899, 904-905 (1st Cir. 1989), the Supreme Court has consistently stated that pendent party jurisdiction, if it exists at all, applies only to "a narrow class of cases." Finley v. United States, 104 L.Ed.2d 593, 603 (1989); see also Aldinger v. Howard, 427 U.S. 1 (1976). We decline to assert pendent party jurisdiction in this case.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

Plaintiffs' final argument in favor of remand is that FLSA actions are not removable. *HN4* The FLSA provides that FLSA actions. "may be maintained . . . in any Federal or State court of competent jurisdiction." 28 U.S.C. § 216(b). Plaintiffs urge that the work "maintain" means that an FLSA action filed in state court **[*6]** cannot be removed.

*HN5* Under 28 U.S.C. § 1441(a), "[e]xcept as otherwise expressly provided by an Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed. . . ." (emphasis added). *HN6* The FLSA's provision that actions under it "may be maintained . . . in any . . . State court" is not an express exception to § 1441(a). Compare 28 U.S.C. § 1445(a) ("A civil action in any State court against a railroad or its receivers or trustees arising under sections 51-60 of Title 45, may not be removed to any district court of the United States":); 15 U.S.C. § 77v(a) ("No case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States"). See Cosme Nieves v. Deshler, 786 F.2d 445, 450-51 (1st Cir.), cert denied, 479 U.S. 824 (1986); J. Moore & B. Ringle, 1A Moore's Federal Practice para. 0.167[5] (2d ed. 1989) ("This ambiguous phrase is certainly not an express provision against removal within the meaning of § 1441").

Courts have differed on this issue. Compare, e.g., Cosme Nieves, 786 F.2d at 450-51 (FLSA cases **[*7]** may be removed); with Bintrin v. Bruce-Merilees Elec. Co., 520 F. Supp. 1026 (W.D.Pa. 1981) (FLSA cases may not be removed). See also 14A C. Wright, A. Miller, E.

Get a Document - by Citation - 1990 U.S. Dist. LEXIS 8892

Case 1:07-cv-00262-GMS    Document 5-2    Filed 06/05/2007    Page 30 of 30    Page 5 of 6

Cooper, Federal Practice and Procedure § 3729, at 495 (1986). However, we believe the majority position that FLSA cases are removable is the better view.

For the above reasons, the plaintiffs' motion to remand is denied.

II. Defendants' motion for partial dismissal

Defendants move to dismiss certain claims as time-barred. Defendants assert that plaintiffs' general contract claims are preempted by § 301 of the Labor Management Relations Act ("LMRA") and that the LMRA has a statute of limitations of six months. The complaint alleges that "plaintiffs were guaranteed and entitled to certain hour and wage rights and benefits pursuant to a collective bargaining agreement between Teamsters Local Union No. 830 and The Delaware Valley Importing Distritutors Association." Complaint, para. 6.

HN7⊼"[A]ny state law cause of action for violation of collective-bargaining agreements is entirely displaced by federal law under § 301" of the LMRA. United Steelworkers v. Rawson, 109 L.Ed.2d 362, 373 (1990). Plaintiffs argue [*8] that because their "claims are not 'substantially dependent upon analysis of the terms,' of the collective bargaining agreement," they are not preempted. Memorandum of Law, at 3 (quoting Allis-Chalmers v. Lueck, 471 U.S. 202, 220 (1985)). However, the issue in Allis-Chalmers was whether a state law tort was preempted by the LMRA and the extent to which "the pre-emptive effect of § 301 must extend beyond suits alleging contract violations." Id. It is indisputable that "a sit in state court alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." Id., 471 U.S. at 210 (citing Teamsters v. Lucas Flour Co., 369 U.S. 95 (1962)). The general contract claims asserted i the complaint are therefore preempted by the LMRA.

HN8⊼The statute of limitations under § 301 is six months. See DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151 (1983). According to the complaint, all the named plaintiffs had left defendants' employment by September 26, 1988, well over six months before this lawsuit was filed on February 16, 1990, Any claims for overtime payments under the collective bargaining agreement [*9] are time-barred.

Defendants also argue that the FLSA and WPCL claims of plaintiffs Clarence Dent, Sr., Fred Scott and Everett P. Johnson are time-barred. Both parties agree that the maximum statute of limitations period is three years under both the FLSA and WPCL; any claim that accrued before February 16, 1987, is time-barred. Because plaintiffs Dent, Scott and Johnson do not allege any payments due after that date, their claims must be dismissed.

An appropriate Order follows.

ORDER

AND NOW, this 16th day of July, 1990, upon consideration of plaintiffs' motion to remand and defendants' partial motion to dismiss and the responses thereto, and for the reasons set forth in the foregoing Memorandum, it is ORDERED that:

1. Plaintiffs' motion to remand is DENIED in part and GRANTED in part. The motion is granted as to claims asserted on behalf of unnamed putative class members. Those claims are REMANDED to the Court of Common Pleas, Philadelphia County. The motion is denied as to all claims asserted by plaintiffs Isaac, Brunson, Dent, Garrett, Johnson and Scott.

2. Defendants' partial motion to dismiss is GRANTED.

a. All claims asserted by plaintiffs Dent, [*10] Scott and Johnson are DISMISSED.

b. All general contract theory claims are DISMISSED.

c. All claims for payments allegedly due before February 16, 1987 are DISMISSED.